ESSEX COUNTY RETIREMENT BOARD *vs.* TOWN OF
NORTH ANDOVER & others
(and a companion case).

Essex.    March 4, 1965. — May 11, 1965.

Present: WILKINS, C.J., SPALDING, KIRK, SPIEGEL, & REARDON, JJ.

*Retirement.* *Equity Jurisdiction,* Compliance with retirement law. *Equity Pleading and Practice,* Parties. *Words,* "Employee."

A county retirement board whose retirement system included employees of a town in the county had standing to seek in a suit in equity termination of the employment of an employee of that town by reason of his age, although he was not a member of the retirement system.    [235]

A municipal registrar of voters is an "employee" of his municipality for the purposes of the retirement law, G. L. c. 32.    [235]

Where a county retirement board under G. L. c. 32, § 3 (2) (d), classified all municipal registrars of voters as ineligible to be members of the county retirement system, nothing in § 3 (2) (f) or § 20 (5) (e) required that a registrar of voters, who because of such classification was not a member of the system, be removed from his office after reaching the age of seventy years, irrespective of his age when he took office.    [236–237]

TWO BILLS IN EQUITY filed in the Superior Court on June 18, 1963.

The suits were heard by *Paquet,* J.

*Arnold H. Salisbury,* Town Counsel (*J. Philip Arsenault* with him), for the defendants.

*James T. Ronan* for the plaintiff.

REARDON, J.    The Essex County Retirement Board (the board) brought substantially identical bills in equity seeking the removal of the defendants Saunders and McCormack from their positions as registrars of voters in the town of North Andover.[1]    In his final decrees the judge of the

---

[1] In both bills the town of North Andover and its treasurer were joined as defendants. The Commissioner of Insurance, originally a party defendant, was eliminated from the controversies by the final decrees of the Superior Court.

Superior Court determined that the board had standing to prosecute the matter; that the defendant registrars are each over the age of seventy; and that the said registrars are required by law to be retired. The several defendants in each case have appealed and the appeals have been consolidated for our consideration.

The facts are not in dispute and were presented to the Superior Court as a case stated. Saunders was born on November 8, 1892, and at age sixty-nine, in March, 1962, was appointed to the position of registrar. He is now serving in that office at an annual salary of $200. McCormack was born on March 17, 1889. He was appointed a registrar in March, 1945, at the age of fifty-six, and has served in that office continually since that date. His annual salary, initially $75, is now $250. The third registrar, who is not involved in these proceedings, was first appointed at age forty-one and, unlike the other two, has not reached age seventy.

It is the "established policy" of the board to classify all municipal registrars of voters as "non-members" of the Essex County Retirement System. This classification has been made under G. L. c. 32, § 3 (2) (d).[2] Thus, no registrar of voters in any town within the Essex County Retirement System is enrolled as a member of that system, nor has any one of the three aforementioned registrars ever been so enrolled. Neither defendant registrar has ever been retired under any retirement or pension law or separated from the public service by reason of superannuation or disability without a retirement allowance or pension.[3]

In October, 1962, the board advised the town treasurer of North Andover that the continued employment of McCor-

---

[2] This statute provides: "In all cases involving part-time, provisional, temporary, . . . or intermittent employment or service of any employee in any governmental unit . . . the board shall have and exercise full jurisdiction to determine such employee's eligibility for membership; provided, that any person holding a position for which the annual compensation is fixed in an amount of two hundred dollars or less shall not be eligible for membership except by vote of the board."

[3] By reason of this fact, St. 1950, c. 639, § 9, repealed by St. 1962, c. 743, § 1, is deemed to have no relevance to the present case.

mack after October 23, 1962, and of Saunders after November 30, 1962, would be illegal and must terminate. On advice of town counsel, and upon direction of the Board of Selectmen of North Andover, the treasurer notified the board to the effect that there would be no termination of the defendants' employment.

1. We agree with the judge that the board has standing to seek the removal of McCormack and Saunders. While this is less clear in this case than in a situation where a retirement board seeks to litigate a claim for funds over which it has control and hence to protect the integrity of the retirement system (see, e.g., *State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.* 342 Mass. 58, 60), we think the broad scheme of G. L. c. 32, and specifically the concluding sentence of G. L. c. 32, § 24 (1),[4] empowers the board to bring this suit.

2. We agree also that the registrars are "employees" for purposes of G. L. c. 32. Section 1 thereof defines an "employee," as applied to persons receiving "regular compensation" from a political subdivision of the Commonwealth, as one "who is regularly employed in the service of any such political subdivision." The phrase "regularly employed" is not defined; we note, however, that the term "employee" as applied to persons regularly compensated by the Commonwealth (as distinguished from a political subdivision) is one whose duties require him to work "during the ordinary working hours of regular and permanent employees." G. L. c. 32, § 1. The lack of such a specification for those compensated by a political subdivision indicates that part time employees of the latter are within the definition. Moreover, "regular compensation" is defined in § 1 of G. L. c. 32 to distinguish between regular pay and bonus or overtime pay rather than between full time and part time employees. The use of the term "employee" in § 3 (2) (d) of the statute (see footnote 2) further supports our conclusion.

---

[4] This provision vests in the Superior Court equity jurisdiction "upon petition of the commissioner of insurance *or any interested party* to compel the observance and to restrain the violation of any provision of sections one to twenty-eight" of G. L. c. 32 (emphasis supplied).

3. Having classified the registrars as nonmembers of the retirement system, the board now contends that registrars must be retired at age seventy. We do not read § 3 (2) (f) or § 20 (5) (e) of G. L. c. 32 to lead to this result. The registrars belong to a class of which no member is eligible for membership in the retirement system. Section 3 (2) (f) provides: "No person who enters or who re-enters the service of any governmental unit as an employee after attaining age sixty, and after the date when a system becomes operative therein, shall become a member except as otherwise provided for in this section. No such employee other than an elected official or a state official . . . shall remain in the service of such governmental unit after attaining the maximum age for the group in which he would have been classified if he had become a member, except under the same conditions which are applicable to a member as set forth in paragraph (e) of this subdivision. . . ." We hold that under this section a person entering governmental service after age sixty is not subject to mandatory retirement at age seventy where, had he entered prior to age sixty, he could not have been admitted to membership in the system. The second sentence of § 3 (2) (f), which is prohibitory, uses the phrase "such employee" to refer back to the exclusionary first sentence. The prohibition of § 3 (2) (f), therefore, relates only to employees barred from membership by reason of age. The registrars are barred by reason of classification under § 3 (2) (d). The third registrar, who entered at age forty-one and is now under seventy, would not be required to retire at seventy, since he is not "such employee." We do not think the registrars are subject to varying treatment under § 3 (2) (f) according to age upon entry into service when the board has established a policy, under § 3 (2) (d), whereby no registrar may be in the system.

4. General Laws c. 32, § 20 (5) (e), adds no prohibition to that contained in § 3 (2) (f). It merely requires the board to "keep a record of the date of birth of each member of the system" and "of each other employee who en-

tered or re-entered the service of the governmental unit to which such system pertains after attaining age sixty . . . ." The board is obliged under § 20 (5) (e) "to notify each such member or employee" as well as the department head and the person responsible for paying his compensation "of the date when such member or employee will attain the maximum age for his group, and such member or employee shall not be employed in any governmental unit after such date . . . ." We conclude that § 20 (5) (e) was designed only to implement § 3 (2) (f) in cases where the latter section applies.

*Decrees reversed.*