Brassard, J.
This case comes before the court pursuant to Mass.R.Civ.P. 56, on the plaintiffs motion for summary judgment and the defendant’s motion for summary judgment.
In the underlying action, the plaintiff, which is charged with the duty of administering the Worcester Retirement System, seeks to recover the amount of $162,890.29, plus interest and costs from July 27, 1994, from the defendant. The plaintiff alleges that the defendant, which is one of the governmental units of which the Worcester Retirement System is comprised, failed to pay its proportionate share for maintenance of the Worcester Retirement System, pursuant to G.L.c. 32, §22(7)(c). The defendant alleges that the plaintiff has misread G.L.c. 32, §3(2)(d), and that, as a result, the plaintiff miscalculated the amount which the defendant owed.
For the following reasons, the plaintiffs motion for summary judgment is ALLOWED, and the defendant’s motion for summary judgment is DENIED.
BACKGROUND
The plaintiff, the Worcester Retirement Board (the “WRB”), is a municipal corporation charged with the duty of administering and managing the Worcester Retirement System (the “WRS”). The WRS is comprised of two units: the City of Worcester (the “City”) and the defendant, the Worcester Housing Authority (the “WHA”). The Massachusetts Division of Public Employee Retirement Administration (“PERA”) is a statutorily created agency which is charged with the duty of overseeing and regulating the public employee retirement systems of the Commonwealth and its subdivisions.
The two units of the WRS are required by statute to submit payroll information to the WRB annually. The payroll information must list the number of unit employees who are members of the WRS. This information is used by the WRB to determine the amount to be contributed by each unit for maintenance of the WRS pension fund for the next fiscal year, and the amount to be contributed for the operating costs of the WRS for the next fiscal year.[1] The WRB must forward the information to PERA by October 15. The information is then reviewed by PERA, which may either approve or disapprove the WRB’s calculations.
The WRB has had a longstanding policy that all employees of the City and the WHA who are regularly scheduled to work twenty or more hours per week must become members of the WRS. The WRB adopted this policy by a vote in 1946, and has consistently implemented it since that time.
In 1990, a dispute arose between the WRB and the WHA. The gist of the dispute was that the WHA did not believe that the WRB actually had a policy requiring that employees who worked twenty or more hours per week become members of the WRS. The WHA therefore had omitted information regarding a number of such employees from the payroll calculations which it submitted to the WRB. The WRB informed the WHA that it did indeed have such a policy, and that the WHA must therefore include calculations for these disputed employees in its reports to the WRB. The WHA then followed the WRB’s position, and included the disputed employees in its calculations for the period of time then in dispute.
As a result of the dispute, the board members of the WRB voted to reaffirm the policy on July 31,1990. The WHA was notified that the policy had been reaffirmed within one week subsequent to the vote.
In October 1992, the WHA again failed to include in its report information regarding some employees who were regularly scheduled to work twenty or more hours per week. Nonetheless, the WRB added the information regarding these employees to its calculations prior to submitting its report to PERA on October 15, 1992. Each of the disputed employees was regularly scheduled to work at least 37 hours per week. In mid-December, 1992, based upon the information submitted by the WRB, PERA determined the Fiscal Year 1994 appropriation of the WRS to be $19,468,500.00. Based upon the same information, PERA determined that the City’s proportionate contribution to the appropriation was to be $18,500,916.00 (95.03% of the total), and that the WHA’s contribution was to be $967,584.00 (4.97% of the total).
On or about June 25, 1993, the WRB informed the WHA that the WHA’s contribution to the appropriation for Fiscal Year 1994 was to be $967,584.00, that the amount was to be paid in monthly installments of $80,632.00, and that the first installment was due by July 31, 1993. By letter dated July 13, 1993, the WHA *236 requested that PERA recalculate its Fiscal Year 1994 calculation. PERA refused to do so.
By letter dated August 31, 1993, the WRB informed the WHA that its contribution to the Fiscal Year 1994 operating costs of the WRS was to be $16,525.29 (also 4.97% of the total).
Rather than paying the amounts which had been approved by PERA and requested by the WRB, the WHA independently recalculated its portion of the Fiscal Year 1994 appropriation and Fiscal Year 1994 operating costs. In doing so, it excluded all calculations based upon the disputed employees. As a result, the WHA determined that it should pay only 4.2 percent of the total appropriation and 4.2 percent of the total operating costs. This percentage translated to a contribution of $817,677.00 to the appropriation (which translates into a monthly installment amount of $68,139.75), and a contribution of $13,965.03 to the operating costs.
The WHA did not submit any monthly payments to the WRB in July, August, September or October of 1993. Nor did it pay the share of operating costs which the WRB had requested. By letter dated November, 19, 1993, the WHA informed the WRB of its independent recalculation of its portion of the appropriation and operating costs. The WHA then paid the WRB $286,873.18, an amount which was meant to reflect the total of its independently recalculated operating costs, plus its independently recalculated monthly installments for the months of July through October. Thereafter, the WHA continued to pay monthly installments based upon its own calculations rather than those of the WRB and PERA.
The difference between the amount which the WRB claims the WHA owes, and the amount which the WHA has paid, is $162,890.29.
PERA was aware of the WRB policy prior to, and during, the dispute which is now before the court. Although John J. McGlynn, the Commissioner of PERA, (“Commissioner McGlynn”) informed the WRB on March 16, 1993 that it “should consider formalizing” its membership policies by submitting them to PERA to be approved as regulations, neither he nor any of his agents ever informed the WRB that it was required to do so. To the contrary, Commissioner McGlynn informed the WRB that “(a]s indicated in the statute [G.L.c. 32, §3], the determination with respect to eligibility for membership in the retirement system is within the jurisdiction of the Board.” After receiving this advice from Commissioner McGlynn, the WRB formally adopted as a regulation its longstanding policy, which had been reaffirmed on March 31,1990 and communicated to the WHA at that time, regarding membership of employees in the WRS. The WRB submitted this regulation to PERA for approval on March 25, 1993; and PERA formally approved the regulation on March 29, 1993.[2]
DISCUSSION
This court grants summary judgment where there are no genuine issues of material facts and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
In the present case, the court is asked to determine whether, as a matter of law, in order for its policy to be enforceable, the WRB was required to file regulations with PERA relating to its (the WRB’s) policy requiring certain Worcester employees to become members of the WRS.
PERA was created by the Legislature in 1983. See St. 1982, c. 630, §2; and G.L.c. 7, §§49, 50 (1994 ed.). Pursuant to G.L.c. 32, titled “Retirement Systems and Pensions,” PERA was granted the power to oversee the civil service retirement and pension systems of the Commonwealth, including the WRS. Prior to the creation of PERA, the power to oversee the retirement and pension systems was vested in the Commissioner of Insurance.
Chapter 32 provides a highly detailed framework for the administration of the retirement and pension systems. The criteria regarding eligibility for membership in the retirement and pension systems are described in G.L.c. 32, §3(2). In relevant part, that section states that “(i[n all cases involving part-time, provisional, temporary, temporary provisional, seasonal or intermittent employment or service of any employee in any governmental unit, . . . the board shall have and exercise full jurisdiction to determine such employee’s eligibility for membership.”[3] G.L.c. 32, §3(2)(d) (1994 ed.).
The WHA argues that G.L.c. 32, §3(2)(d) does not give the WRB sole authority to determine membership in the WRS. Rather, it argues, the provisions of G.L.c. 32 and of G.L.c. 7, §§49 and 50, when read as a whole, require the WRB to submit all membership policies to PERA for approval. In particular, the WHA relies upon G.L.c. 7, §50, which states that PERA shall have the power to “approv[e] the rules and regulations of individual retirement boards, as to conformity with law and regulations,” and upon G.L.c. 32, §21, which states that “(t]he commissioner of [PERA] shall promulgate such rules and regulations as he may deem necessary from time to time to effectuate the purposes of this chapter, and he or his agent shall approve any *237 by-laws, rules, regulations, prescribed forms or determinations of any board in order to effectuate such purposes.” G.L.c. 7, §50(b) (1994 ed.); G.L.c. 32, §21(4) (1994 ed.) (emphasis added).
Prior to 1983, when PERA, was created by the Legislature, §21 had provided that “(t]he commissioner of insurance shall promulgate such rules and regulations as he may deem necessary from time to time . . . and he . . . may approve any by-laws, rules, regulations, prescribed forms or determinations of any board in order to effectuate such purposes.” St. 1945 c. 658, §21 (4) (emphasis added). The WHA argues that, by substituting the word “shall” for “may,” the Legislature made it mandatory for local retirement boards to submit all of their policies to PERA for approval.
A literal interpretation of these sections does not support the WHA’s contention that local boards are required to adopt rules and regulations regarding membership policies and to submit these rules and regulations to PERA. See Marco v. Green, 415 Mass. 732, 739 (1993) (holding that, where statute is not ambiguous or couched in terms suggesting that court must look beyond its express language, the court is to construe the statute in accordance with its plain meaning). The sections relied upon by the WHA do not support its contention that local boards are required to promulgate rules and regulations. Rather, they require that PERA adopt certain regulations. They further require that, if and when a local board adopts a rule or regulation regarding the same subject for which PERA has adopted a regulation, PERA must review that rule or regulation to ensure that it complies with the purposes of the chapter, as well as with PERA’s own regulations. The court cannot conclude that the thrust of these provisions was to require all retirement boards to formalize as regulations all of their previously applied policies and practices.
The WHA relies upon 840 Code Mass. Regs. §14.00, et. seq., in support of the proposition that the WRB’s membership policies became invalid because it did not file these polices with PERA in 1984 when PERA succeeded the Division of Insurance. These administrative regulations, which were enacted by PERA pursuant to its power under G.L.c. 32 §21(4), state that the “[Jules of the Commissioner of [PERA] shall apply to all retirement boards . . . ,” 840 Code Mass. Regs. §14.01; that “[a]ny retirement board may request the Commissioner to approve rules applicable to that board which supplement the provisions of the Commissioner’s rules 840 Code Mass. Regs. §14.02; and that “[n]o retirement board rule at any time adopted or observed, other than the Commissioner’s rules and supplementary rules approved by the Commissioner, shall be effective or be observed after September 30, 1984" unless the rule is filed with, and not disapproved by, PERA. 840 Code Mass. Regs. §14.03.
It is important to note that the WHA does not contend that the longstanding policy of the WRB at issue in this case was in any way inconsistent with any regulation of PERA. The provisions of the statute itself, as interpreted by PERA, give full jurisdiction to the WRB to determine the eligibility of employees for membership.
The WHA’s argument notwithstanding, a fair reading of the statutes and regulations reveals that a retirement board has the authority to enforce its membership policy regarding the eligibility of less than full time employees without adopting a formal regulation. If the legislature had intended to require that retirement boards submit their eligibility policies to PERA, it could have specifically imposed a regulation requirement in §3(2) (d).
In G.L.c. 32, §4, entitled “Creditable service,” the legislature did impose such specific requirements. It specified that “[e]ach person becoming a member of the system shall, within one year thereafter and under such rules and regulations adopted by the board and approved by the commissioner of public employee retirement, file a detailed statement of all service for which he claims credit...” G.L.c. 32 §4(2)(a) (1994 ed.) (emphasis added). The statute further requires that “[i]n the case of any employee of any governmental unit who is a member of the retirement system pertaining thereto, the board may allow credit, upon whatever proportionate basis it shall determine under appropriate rules and regulations which shall be subject to the approval of the actuary.” G.L.c. 32, §4(2)(c) (emphasis added). In addition, the statute states that “[u]nder this section, the board, with the approval of the commissioner, shall adopt rules and regulations to provide that such member shall on an annual basis file an affidavit under the penalties of perjury, certifying such information as the board deems appropriate.” G.L.c. 32, §4(4) (emphasis added).
To accurately interpret a statutory provision, a court must consider “the statute in its entirety, deriving the meaning of a part from the whole of the words and phrases that the legislature declared .to be the law.” Little People’s School, Inc. v. U.S., 842 F.2d 570, 573 (1st Cir. 1988). As a general rule, when the Legislature has used specific language in one part of a statute, but not in another part which deals with the same topic, the specific language should not be implied where it is not present. Hartford Insurance Co. v. Hertz Corp., 410 Mass. 279, 283 (1991). While §3 and §4 do not deal with an identical topic (the former addresses membership in the systems, and the latter addresses creditable service), the sections are closely related. Each of the quoted provisions of §4 refers to one’s status as a “member,” which status is determined under §3. Given the interrelation between the two sections, it is fair to conclude that, where the legislature mandated the adoption of rules and regulations in one section, it would have done so in the other if it had intended to require local boards to adopt such rules and regulations. Instead, the legislature apparently made a decision not to require the adoption of rules and regulations under §3, and it therefore did not include such language in §3(2) (d). The most logical *238 interpretation of the section, therefore, is that the WRB has the sole authority to make determinations regarding membership in the WRS. The facts before the court reveal that the WRB has done exactly what it is allowed to pursuant to §3(2) (d). It has uniformly applied its membership policy to each employee of the Ci1y and of the WHA, and has required each individual employee who regularly works greater than twenty hours per-week to become a member of the WRS.
This interpretation of the statute is in accord with prior case law and with PERA’s own determinations. In Essex County Retirement Board v. North Andover, 349 Mass. 233 (1965), and Andrade v. Contributory Retirement Appeal Board, 350 Mass. 447 (1966), the Supreme Judicial Court upheld the power of local boards regarding membership decisions pursuant to G.L.c. 32, §3(2)(d). In Essex, the SJC did not require a regulation to enforce a retirement board membership policy under G.L.c. 3(2)(d), stating that “[i]t is the established policy of the board to classify all municipal registrars of voters as non-members of the Essex Counly Retirement System.” Essex, 349 Mass. at 234. In Andrade, the SJC again recognized that a board has the “full discretion” to determine the eligibility of part-time employees for membership. Andrade, 350 Mass. at 450. Both of these cases were decided prior to the 1983 creation of PERA. Nonetheless, the opinions are consistent with this court’s interpretation of §3(2) (d), the provisions of which have remained unchanged since Essex and Andrade were decided.
“Courts look for and will normally accord great weight to an administrative agency’s interpretation— particularly if long standing — of the law which the agency is charged to administer.” Namay v. Contributory Retirement Appeal Board, 19 Mass.App.Ct. 456, 463 (1985) (citations omitted). PERA is charged with the responsibility of determining whether the boards’ policies and regulations, once adopted, comply with the laws of the Commonwealth’s retirement system. G.L.c. 7, §50; G.L.c. 32, §21(4). PERA’s own interpretation of G.L.c. 32, §3(2)(d), therefore, is entitled to deference. Its interpretation has been that the WRB has full authority to determine eligibility of part-time employees in the retirement system.
Three different factors reveal that PERA was aware of the policies of the WRB regarding membership of part-time employees, and that it has not interpreted G.L.c. 32, §(3)(2)(d) in a manner which would require the WRB or other local retirement boards to formalize their membership policies as regulations. First, the Division of Administrative Law Appeals (“DALA”) and the Contributory Retirement Appeals Board (“CRAB”), both of which are adjudicatory branches of PERA, recognized the existence of the WRB’s policy in Bracewell v. Worcester Retirement Board, CR-93-431 (November 15, 1993), stating that “[t]he long-time practice of the board is to allow only those employees who consistently work 20 or more hours per week to join the retirement system.” Id. at 2-3. Second, Frank Zecha, who conducts audits of local boards for PERA, testified in his deposition that he was aware that some local boards had filed membership policies in the form of regulations, while other boards did not.[4]
Third, in a letter sent to the WRB and WHA dated March 16, 1993, Commissioner McGlynn recognized the existence of the WRB’s longstanding policy. Though he stated that “[t]he Board should consider formalizing” its membership policies as regulations, Commissioner McGlynn did not require the WRB to do so. To the contrary, he made clear that “[a]s indicated in the statute, the determination with respect to eligibility for membership in the retirement system is within thejurisdiction of the Board,” (emphasis added) and that “[i]n making its determination, the Board should treat all persons ... in a consistent manner.”
In conclusion, based upon an examination of Chapter 32 in its entirely, an analysis of relevant case law, and consideration of PERA’s own interpretation of the statute, this court concludes that G.L.c. 32, §3(2)(d) does not require local retirement boards to file regulations with PERA regarding their membership policies for part-time employees. Therefore, the court concludes that the WRB properly calculated the amount of the WHA’s contributions to the Fiscal Year 1994 appropriation and the Fiscal Year 1994 operating costs.
ORDER
For the above stated reasons, it is hereby ORDERED that summary judgment be ALLOWED for the plaintiff, and DENIED for the defendant. It is further ORDERED that judgment enter for the plaintiff in the amount of one-hundred-sixty-two-thousand-eight-hundred-ninety dollars, and twenty-nine cents ($162,890.29), plus interest and costs as provided by law, against the defendant.

The relevant fiscal year begins in July of the year following the year in which the reports are submitted to the WRB by the WHA and the City. For example, calculations submitted in October, 1992 would be used to determine the appropriations for the fiscal year which begins on July 1, 1993 and ends on June 30, 1994.

The parties do not dispute the applicability of this regulation for Fiscal Year 1995 or any subsequent fiscal years.

It is undisputed that the Worcester Retirement Board is a “board” as defined in G.L.c. 32, §1.

It is important to note that, if the court were to find that the WRB did not have the power to determine membership, the power would have belonged to the WHA by default. There is no statutory provision, however, which grants such power to the WHA. In addition, such a ruling would lead to inconsistency among and within the various cities and towns of the Commonwealth. In those cities and towns in which the retirement board has adopted a formal regulation, the retirement board would have authority to determine the membership of all employees within the retirement system. In those cities and towns in which the retirement board has not adopted a formal regulation, each municipal unit would independently determine the membership of its own employees.