MULTI-LINE INSURANCE RATING BUREAU *vs.*
COMMISSIONER OF INSURANCE.

Suffolk.    November 3, 1969. — February 9, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Insurance,* Rating organization, Commissioner of Insurance.   *State Administrative Procedure Act.    Regulation.    Constitutional Law,* Equal protection of laws.

Rules issued by the Commissioner of Insurance under G. L. c. 174A, § 15 (d), requiring rating organizations licensed under § 8 to provide for the auditing of certain multi-line policies issued by their subscribers and members and to maintain auditing units, were not invalid as in conflict with § 8 (e), which permitted such acts by the rating organizations, or as in violation of a rating organization's constitution which impliedly authorized such acts, or by reason of a penalty prescribed by the rules, or as denying equal protection of the laws in that policies other than multi-line policies were not subject to the rules. [22–23]

Upon review of an order of the Commissioner of Insurance by this court under G. L. c. 174A, § 18 (c), "on the basis of the record of the proceedings before the commissioner" and in accordance with the standards set forth in c. 30A, § 14 (8), it was held that in the circumstances the constitution of a rating organization which was the appellant from the order, and facts relating to expenses which the order would cause, were part of the record, but that certain letters written after the order was issued and presented by the organization for the sole purpose of an interpretation of it were not part of the record.    [24]

APPEAL filed in the Supreme Judicial Court for the county of Suffolk on August 31, 1966.

The case was reserved and reported by *Reardon,* J.

*Walter J. Hurley (Thomas E. Cargill, Jr.,* with him) for Multi-Line Insurance Rating Bureau.

*Paul N. Gollub,* Assistant Attorney General, for the Commissioner of Insurance.

REARDON, J. Multi-Line Insurance Rating Bureau (Multi-Line) appeals under G. L. c. 174A, § 18 (c), from an order of the Commissioner of Insurance (Commissioner). The matter was reserved and reported by the single justice without decision upon the pleadings, certain interlocutory decrees, a statement of agreed facts, and the record of the proceedings before the Commissioner including a transcript of the testimony and exhibits. The single justice stayed the effective date of the order pending final determination of the appeal by the full court. The statement of agreed facts discloses the following.

Multi-Line is a rating organization licensed under G. L. c. 174A, § 8, to act in that capacity for "so-called multi-line (also known as multi-risk or multi-peril) insurance issued by its members and subscribers" as authorized by pertinent provisions of G. L. c. 175. It periodically files in behalf of its members and subscribers rates, rating rules, rating plans and schedules. On June 7, 1966, the Commissioner issued rules "purportedly under G. L. c. 174A, § 15 (d), requiring the auditing of certain multi-line policies effective September 1, 1966. (Auditing is the review of the evidences of insurance to determine if the proper premium rate, classification, proper policy form and other proper aspects of coverage have been used.)" The Commissioner subsequently postponed the effective date of the rules which were then again stayed by an interlocutory decree of the county court. The Commissioner, prior to issuing the rules, had held a hearing on April 7, 1966, notice of which was given on March 2, 1966, to all companies and rating bureaus including Multi-Line. Certain documents were introduced before him at the hearing on April 7, 1966. Subsequent to the hearing and issuance of the rules there was an exchange of letters between the general manager of Multi-Line and the chief actuary of the Division of Insurance, which the Com-

missioner claims is not part of the record. These letters concern the establishment of an auditing bureau by Multi-Line and the continuous expenditure of funds therefor.

The Commissioner has demurred in this proceeding on the ground that the appeal of Multi-Line was not filed in time under G. L. c. 30A, § 14 (1). Multi-Line argues that the rules exceed the Commissioner's authority since they require mandatory auditing conflicting with G. L. c. 174A, § 8 (e), which permits but does not require auditing by rating organizations, and also because the rules prescribe a penalty which the Commissioner does not have authority to impose. Additionally, argument is made that the penalty provision is invalid since it provides in effect the same penalty regardless of the degree of seriousness for each violation. Multi-Line argues also that the rules deny it due process and equal protection of the law.

1. Prior to the enactment of c. 174A the committee on insurance, sitting as a special recess committee to study State regulation of the insurance industry, studied and analyzed various bills relative to insurance filed with the 1947 session of the General Court. Senate Bill No. 610 of that year, which came from its studies, was recommended by the committee because it believed it to be "in the public interest to adopt a . . . rate regulatory law which will provide for reasonable competition in the business, for flexibility in rating procedure, and for protection to the public against excessive, inadequate or discriminatory rates." The committee recognized the need for extensive supervisory powers over rating organizations to be lodged in the Commissioner, and at page 21 of its report it stated: "The Insurance Commissioner is vested with power at any time upon his own initiative . . . to investigate and determine whether the rates meet the statutory standards . . . .. The Commissioner has authority through his licensing power *and otherwise* to control and supervise the operation of rating bureaus, including out-of-state bureaus" (emphasis supplied). Under the terms of c. 174A, in order that its provisions may be carried out, it is to be liberally construed. See G. L. c. 174A,

§ 2. See also *Insurance Co. of No. America* v. *Commissioner of Ins.* 327 Mass. 745, 747–750. The broad supervisory power of the Commissioner of Insurance, with particular reference to G. L. c. 175, was discussed in *Commissioner of Ins.* v. *First Natl. Bank,* 352 Mass. 74, 79–80. In that opinion there is reference to his power of "broad surveillance" over the operations of companies. See G. L. c. 174A, § 15. When a general power is given, all authority necessary to carry it out is inferred by implication. *Lynch* v. *Commissioner of Educ.* 317 Mass. 73, 80. *Scannell* v. *State Ballot Law Commn.* 324 Mass. 494, 501. Compare *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare,* 326 Mass. 121, 124, and cases cited.

2. It could be stated that c. 174A, § 8 (e), authorizes the operation of a stamping office (auditing unit), the functions of which are well recognized. In view of the Commissioner's broad regulatory powers, the rules requiring auditing are not in conflict with § 8 (e). G. L. c. 174A, § 15. See *Insurance Co. of No. America* v. *Kueckelhan,* 70 Wash. 2d 822. The Commissioner may require the rating organization to do that which the statute permits such an organization to do on its own motion.

Argument has been made that the Commissioner is ordering Multi-Line to do something illegal on the basis that it "has a statutory obligation to operate in accordance with its Constitution and regulations." However, the objects of Multi-Line as set forth in art. III of its constitution impliedly authorize the maintenance of an auditing unit.[1] In art. VIII, Multi-Line's executive committee is given power

---

[1] "Article III — Objects. The objects of the Bureau, subject to applicable law, shall be: 1. To develop forms of multiple line coverages and rates and premiums therefor, embracing any combination of two or more lines of insurance traditionally considered fire, inland marine, casualty or fidelity, and to make filings for such multiple line coverages as authorized by member and subscriber companies. 2. To conduct research, procure information and compile statistics for use in establishing rates or premiums for risks for the kinds of insurance in respect of which the Bureau functions. 3. To furnish information, statistics, recommendations, services and advice to members and subscribers. 4. To represent its members and subscribers and act as their agent to such extent as they may authorize. 5. To perform such other functions as are necessary or incidental to the foregoing including cooperation with other rating or advisory organizations."

"[t]o adopt reasonable and equitable rules, not inconsistent with the Constitution," and by art. XI the constitution is made freely amendable. We see no barrier to the action of the Commissioner in Multi-Line's constitution.

Argument is made that the penalty provision is invalid because it prescribes the same punishment for each offence. However, we deem the penalty provision in the rules to be valid in that it does not prescribe penalties more severe than those now enumerated in the General Laws. See c. 174A, § 17. The rules of the Commissioner extend to the rating company sixty days after the error is reported to the Commissioner to correct it. If it be not corrected then, the company is subject to the penalties of the statutes. This does not appear to constitute any unconstitutional delegation of power. Compare *Commonwealth* v. *Diaz,* 326 Mass. 525, which deals with wide differences in the seriousness of offences, with no opportunity being afforded for the correction of infractions.

3. Argument was made before the Commissioner, and also before us, that the cost of carrying out the auditing rules by Multi-Line would be so substantial as to deny due process. This argument has not been substantiated by appropriate evidence. Lacking such evidence we cannot agree with Multi-Line's contention on this point.

Nor is Multi-Line denied equal protection of the laws. In *Insurance Co. of No. America* v. *Kueckelhan,* 70 Wash. 2d 822, 839, it was stated as follows: "Finally, application of the Commissioner's order to property insurers alone simply does not amount to unconstitutional, unreasonable, or arbitrary discrimination. . . . [The statute] comprehends that the Commissioner may direct examination of policy documents of one kind of insurance as opposed to another, and the evidence adduced at the hearing before the Commissioner, although not in total accord, supports the Commissioner's decisions." To this statement we subscribe. In short, we see nothing in the constitutional argument advanced by Multi-Line. See *Goodale* v. *County Commrs. of Worcester,* 277 Mass. 144, 147, and cases cited.

4. The parties have raised questions relative to material properly includable in the record. Chapter 174A, § 18 (c), expressly provides that review of any order of the Commissioner under authority of this chapter "shall be on the basis of the record of the proceedings before the commissioner" and shall be in accordance with the *standards* set forth in c. 30A, § 14 (8). Under paragraph (4) of § 14 the record consists of (a) the entire proceedings, or (b) such portions as the agency and the parties may stipulate, or (c) a statement of the case agreed to by the agency and the parties. In construing c. 174A, § 18 (c), in *Insurance Co. of No. America* v. *Commissioner of Ins.* 327 Mass. 745, 753, we said, "The review embraces questions of law, and, on the factual side, a reëxamination of the *proceedings already concluded before* the commissioner in order to determine whether his findings had reasonable support in the evidence" (emphasis supplied).

The constitution of Multi-Line, it is agreed, was on file with the Commissioner prior to the notice of the hearing as required by c. 174A, § 8 (a). The argument that the rules would be violative of Multi-Line's constitution was made at the hearing before the Commissioner. Further, at the hearing a request was made of the Commissioner to allow Multi-Line to file a brief within three weeks. This permission was granted. The brief argued the prohibition in the constitution of Multi-Line. The argument was also made at the hearing of the heavy expense to Multi-Line these rules would require. This was also argued in Multi-Line's brief submitted to the Commissioner. The Commissioner's contention that neither Multi-Line's constitution nor the facts that were set forth in the agreed statement relating to expenses of auditing were in evidence before him should be rejected. They were part of the record.

With respect to the letters of June 30, 1966, and July 28, 1966, the same cannot be said. They were written after the Commissioner's rules were issued. Multi-Line seeks to introduce these letters for the sole purpose of an interpretation of the rules, not to challenge their validity.

5. The Commissioner contends that the August 31, 1966, appeal of Multi-Line was not filed in time, the Commissioner's rules being promulgated June 7, 1966. In view of the disposition of this appeal we do not discuss his contention.

6. An interlocutory decree is to be entered in the county court overruling the demurrer and a final decree is to be there entered affirming the rules.

*So ordered.*