JAMES FLANAGAN *vs.* CONTRIBUTORY RETIREMENT APPEAL BOARD & another.[1]

No. 98-P-671.

Bristol. November 4, 1999. - June 14, 2001.

Present: BROWN, LENK, & BECK, JJ.

*State Board of Retirement. Retirement. Public Employment,* Retirement. *Administrative Law,* Agency's authority, Judicial review. *Statute,* Construction.

The State Board of Retirement had authority under G. L. c. 32, § 20(5)(*b*), to recover pension benefits received, in violation of G. L. c. 32, § 91, by a retiree from State service whose combined pension and payments from work as a consultant for Bristol County were greater in certain years than the current salary in the position from which he was retired. [864-868]

CIVIL ACTION commenced in the Superior Court Department on September 29, 1995.

The case was heard by *Richard J. Chin,* J.

*John E. Bowman, Jr.,* Assistant Attorney General, for the defendants.

BECK, J. This case requires that we determine whether the State Board of Retirement has authority under G. L. c. 32, § 20(5)(*b*), to recover pension benefits the plaintiff received in violation of G. L. c. 32, § 91. The facts and procedural background, as to which there is no dispute, are as follows.

The plaintiff, James Flanagan, retired from State service in 1987 after thirty years employment at Southeastern Massachusetts University (now the University of Massachusetts at Dartmouth) and seven years as a school teacher. Shortly after retiring, Flanagan began working for Bristol County as a consultant, providing services to inmates at the Eastern Massachusetts Correctional Alcohol Center. Flanagan's pension

[1]State Board of Retirement.

ranged from $34,035 in 1987 to $35,315 in 1992. In each of those years (except 1987 when he earned substantially less) he also earned approximately $28,000 from Bristol County. The salary during that period for his former job at the university ranged from $47,600 in 1987 to $57,488 in 1992.

In April, 1993, the State Board of Retirement (retirement board) determined that Flanagan was in violation of G. L. c. 32, § 91. Subsection (*a*) of § 91, as amended by St. 1968, c. 676, provides in relevant part:

> "No person while receiving a pension or retirement allowance from the commonwealth, or from any county, city, town or district, shall, after the date of his retirement be paid for any service rendered to the commonwealth or any county, city, town or district, except upon his return and restoration to active service . . . ."

Subsection 91(*b*), as amended through St. 1981, c. 711, sets out numerous explicit exceptions to the broad rule of subsection (*a*), including a provision allowing public retirees to

> "be employed in the service of the commonwealth, county, city, town, district or authority for not more than one hundred and twenty days, or nine hundred and sixty hours in the aggregate, in any calendar year; provided that the earnings therefrom when added to any pension or retirement allowance he is receiving do not exceed the salary that is being paid for the position from which he was retired . . . ."

Performing the relevant calculations, the retirement board determined that in each of the years from 1988 to 1992 Flanagan's combined pension and consultant payments were greater than the current salary in the position from which he was retired. The total excess for those five years was $48,172. The retirement board then determined to withhold Flanagan's monthly retirement checks until the overpayment was recovered.

Flanagan appealed to the Contributory Retirement Appeal Board (CRAB). See G. L. c. 32, § 16(4). CRAB referred the matter for a hearing before a magistrate of the Division of Administrative Law Appeals. *Ibid.* See G. L. c. 7, § 4H. Rejecting Flanagan's argument that the statute did not apply to him

because he was a contractor, not an employee of the county, the magistrate found that Flanagan had indeed received payments in violation of c. 32, § 91. However, she concluded that the retirement board had no authority to recover the amount by withholding Flanagan's pension payments. Both Flanagan and CRAB sought further review. Flanagan objected to the conclusion that he had violated § 91(a), and to the computation of the amount he earned from the county in 1987. After further briefing from Flanagan and the retirement board, CRAB issued a decision adopting the magistrate's finding that Flanagan's county earnings violated § 91. Relying on an Opinion of the Attorney General, Rep. A.G., Pub. Doc. No. 12, at 152-156 (1979), CRAB also concluded that the retirement board had authority to recover the overpayments.

After his motion for reconsideration was denied, Flanagan brought an action for review in Superior Court. He claimed that CRAB's decision did not pass muster under G. L. c. 30A, § 14(7). A Superior Court judge held for Flanagan and reversed CRAB's decision. The judge found that CRAB's decision was based on an error of law because the retirement board had no authority to withhold Flanagan's retirement payments. The case is before us on the appeal of CRAB and the retirement board.

*Standard of review.* As relevant here, the Superior Court may reverse a decision of an administrative agency if the decision is based on an error of law or unwarranted by the facts, or is arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law. G. L. c. 30A, § 14(7)(c), (f), (g). In making this determination, the court should "give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14(7), as amended by St. 1973, c. 1114, § 3. *Barnstable County Retirement Bd.* v. *Contributory Retirement Appeal Bd.*, 43 Mass. App. Ct. 341, 345 (1997). The Superior Court's decision rejecting CRAB's legal conclusion is subject to de novo review in this court and there is no reason for us to give it any special weight. See *Taunton Greyhound Assn., Inc.* v. *State Racing Commn.*, 10 Mass. App. Ct. 297, 299 (1980). However, although "[t]he duty of statutory interpretation is for the courts . . . [where the agency's] statu-

tory interpretation is reasonable . . . the court should not supplant [it with its own] judgment." *Flemings* v. *Contributory Retirement Appeal Bd.*, 431 Mass. 374, 375 (2000), quoting from *Dowling* v. *Registrar of Motor Vehicles*, 425 Mass. 523, 525 (1997), quoting from *Massachusetts Med. Soc.* v. *Commissioner of Ins.*, 402 Mass. 44, 62 (1988).

*Legislative history of c. 32, § 91.* Persons receiving a pension from a governmental unit in the Commonwealth have been prohibited from collecting a salary from the same entity since at least 1913. See St. 1913, c. 657, § 1. The Legislature began to provide for exceptions as early as 1916. See, e.g., St. 1916, c. 88 (allowing exceptions for jury duty and teachers receiving limited annuities); St. 1919, c. 80 (exception for elected officials). Section 91, incorporating the basic proscription as well as the exceptions, first appeared in 1932 in the Tercentenary Edition of the General Laws. Amendments in 1941 expanded the prohibition to preclude the simultaneous receipt of pension benefits and payments for services from governmental entities generally. St. 1941, c. 670, § 24. Specific exceptions continued to appear. See, e.g., St. 1947, c. 394, allowing retirees to work as confidential executive branch employees so long as they deducted an amount equal to their retirement allowance from their compensation.

In 1968, the Legislature substantially revised § 91, setting out its provisions in four subsections. See St. 1968, c. 676. It is the third of these subsections that is at issue here. As appearing in St. 1983, c. 636, § 17, G. L. c. 32, § 91(*c*), provides in relevant part that, if the earnings of a retiree receiving payments for work pursuant to the exception set out in § 91(*b*)

> "exceed the amount allowable under paragraph (*b*), he shall return to the appropriate treasurer or other person responsible for the payment of compensation all such earnings as are in excess of said allowable amount. The amount of any excess not so returned may be recovered in an action of contract by the appropriate treasurer or other person responsible for the payment of the compensation of any such person."

*Legal analysis.* The Superior Court judge concluded that only the treasurer of Bristol County could take action to recover the

overpayments. According to the judge's interpretation, "the [L]egislature intended that the employer should regain any monies which were expended in violation of the statute." He found that CRAB's approach, permitting an offset against future benefits, would yield an "undesirable result" resulting in "chaos" because under that interpretation both the employer and the retirement board would be authorized to recover overpayments.

CRAB and the retirement board argue that the board has implicit authority under G. L. c. 32, § 20(5)(*b*), to seek reimbursement. Subsection (5) of § 20 is captioned "General Powers and Duties of Boards." Paragraph (*b*) of § 20(5) authorizes retirement boards to adopt by-laws, make rules and regulations, and provide for payments. That paragraph also provides that retirement boards "shall have such other powers and shall perform such other duties and functions as are necessary to comply with such provisions." CRAB and the retirement board find support for their position in an Opinion of the Attorney General, see Rep. A.G., Pub. Doc. No. 12, at 152-156 (1979), principles of statutory construction, and policy considerations.

The Attorney General's opinion, issued eleven years after the enactment of § 91(*c*), was a response to a question from the then-chairman of the retirement board. The question posed was the same as that at issue here: whether the board had authority to recover payment made in violation of G. L. c. 32, § 91, either by requiring the retiree to return the excess benefits or by setting off the overpayments from subsequent retirement payments. The Attorney General authorized the board to proceed under either alternative. His reasoning was as follows. "Under the explicit terms of § 20(5)(b), the Board is to have such powers and duties as are necessary to satisfy the requirements of the statutory retirement scheme of c. 32. This general regulatory and administrative mandate carries with it the authority to take all necessary steps to fulfill the Board's responsibilities." Rep. A.G., *supra* at 156, citing *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.*, 348 Mass. 538, 544 (1965); *Multi-Line Ins. Rating Bureau* v. *Commissioner of Ins.*, 357 Mass. 19, 22 (1970). The Attorney General went so far as to

conclude that "it is therefore the duty of the Board to take remedial action," and opined that both methods were available.[2] *Ibid.*

The Attorney General made two other relevant observations. First, he noted that if the board had no authority to recoup the excess benefits, "[s]uch a reading would turn the statutory retirement scheme on its head by providing retirement benefits to employed persons rather than a limited opportunity for compensated employment to retired persons." Rep. A.G., *supra* at 154-155. He also observed that because § 91(*b*) is "an exception to the long-established, general prohibition of § 91(a) . . . the subsection [should] be given a narrow interpretation." *Id.* at 155, citing *Baker Transp., Inc.* v. *State Tax Commn.*, 371 Mass. 872, 877 (1977). We agree with the Attorney General's reasoning.

Contrary to the judge's concern, we doubt that allowing either the retirement board or the employer to recover the excess compensation will lead to chaos. Appropriate resort to joinder, see Mass.R.Civ.P. 19, 365 Mass. 765 (1974), or interpleader, see Mass.R.Civ.P. 22, 365 Mass. 767 (1974), should ensure rational resolution of any dispute. For the same reason there was no implied repeal of the retirement board's authority under § 20(5)(*b*). See *Doherty* v. *Commissioner of Admn.*, 349 Mass. 687, 690 (1965) (test of implied repeal is "whether the prior statute is so repugnant to and inconsistent with the later enactment covering the subject matter that both cannot stand").

Moreover, the interpretation the judge adopted would mean that for fifty-five years, from 1913 to 1968, there was no legitimate mechanism for enforcing the clear intent of the Legislature. We reject such a construction of § 91. "Barrenness of accomplishment is not lightly to be imputed to the legislative

---

[2]Although the Attorney General did not mention that the language of § 20(5)(*b*) addresses explicitly only the provisions of sections one through twenty-eight of c. 32, we think the failure to mention § 91 is not fatal to his analysis. See *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 345 (1978) (When the Legislature enacts comprehensive legislation, "there are likely to be . . . gaps in the statutory provisions. As . . . the difficulties are revealed, the courts are called on to interweave the statute with decisions answering the difficulties and composing, as far as feasible and reasonable, an harmonious structure faithful to the basic designs and purposes of the Legislature").

branch of the government." *Selectmen of Topsfield* v. *State Racing Commn.*, 324 Mass. 309, 314 (1949). "The construction of a statute which leads to a determination that a piece of legislation is ineffective will not be adopted if the statutory language 'is fairly susceptible to a construction that would lead to a logical and sensible result.' " *Adamowicz* v. *Ipswich*, 395 Mass. 757, 760 (1985), quoting from *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979). See *Beth Israel Hosp. Assn.* v. *Board of Registration in Med.*, 401 Mass. 172, 176 (1987) ("[A]gencies have leeway in interpreting statutes they enforce, and . . . specific statutory authority does not bar consistent action under general authority"). It is unlikely the Legislature intended that retirees comply with § 91 under an honor system.

As the retirement board points out, Bristol County has not sought to recoup the payments it made to Flanagan. Having received the services for which it paid, it has no reason to file an action under § 91(*c*). It is the retirement board, serving thousands of other retirees that has reason to enforce the law by recouping pension payments which violate the clear and long-standing intent of the retirement law. Publicly administered and financed pension benefits are intended to support those who are retired from public service.

Considering all these factors — the retirement board's implicit authority under G. L. c. 32, § 20(5)(*b*), principles of statutory construction, the deference due to CRAB's experience with these matters, and standards of review under G. L. c. 30A, § 14 — we conclude that the Superior Court judge erred in reversing CRAB's decision.

We note that, at the administrative level, Flanagan argued § 91 does not apply to him because he was not a county employee but an independent contractor. The Superior Court did not address this issue. Flanagan has not filed a brief in this court; we therefore do not consider that issue. See *Commonwealth* v. *Petralia*, 372 Mass. 452, 454 (1977). But see G. L. c. 32, § 91(*a*) (establishing limited exception for "contractual service, or service as a nonemployee, rendered to the general court" from general prohibition against payment for services to retirees; there is no such exception for other contractors). See also *District Attorney for the Plymouth Dist.* v.

*Selectmen of Middleborough*, 395 Mass. 629, 633 (1985) (exceptions not to be implied). So, too, we do not address Flanagan's argument before the Division of Administrative Law Appeals that the tax consequences of a ruling against him ought to be considered. That issue appears not to have been addressed below.

The Superior Court's judgment for Flanagan is vacated and judgment shall enter affirming the decision of CRAB.

*So ordered.*