BRISTOL COUNTY RETIREMENT BOARD *vs.* CONTRIBUTORY
RETIREMENT APPEAL BOARD & others.[1]

No. 04-P-1508.

Suffolk. June 13, 2005. - January 26, 2006.

Present: COWIN, SMITH, & GREEN, JJ.

*Contributory Retirement Appeal Board. County,* Retirement board. *State Board
of Retirement. Public Employment,* Retirement benefits. *Retirement.*

Where the recipient of a county pension accepted employment with a State
agency and received excess payments due to the State Board of
Retirement's error, the defendant Contributory Retirement Appeal Board's
decision to relieve the pensioner of her obligation, pursuant to G. L. c. 32,
§ 91(*c*), to refund those excess payments to the plaintiff county board of
retirement (county board) was inconsistent with the public employee retire-
ment law and constituted an error of law to the extent that the decision
concluded that the county board had abused its discretion in denying the
pensioner relief pursuant to G. L. c. 32, § 20(5)(*c*)(3). [446-452]

CIVIL ACTION commenced in the Superior Court Department on
March 3, 2003.

The case was heard by *Elizabeth M. Fahey*, J., on motions
for judgment on the pleadings.

*Michael Sacco* for the plaintiff.

*James H. Quirk, Jr.*, for Doris Polycarpo.

*Annapurna Balakrishna*, Assistant Attorney General, for the
Contributory Retirement Appeal Board & another.

COWIN, J. We consider whether, within the confines of the
State retirement law, defendant Contributory Retirement Appeal
Board (CRAB) may lawfully relieve a pensioner, here,
defendant Doris Polycarpo, from a statutory obligation to refund
excess payments made because of an error committed by
defendant State Board of Retirement (State board). The case

[1]State Board of Retirement and Doris Polycarpo.

arose when the plaintiff, the Bristol County retirement board (county board), sought to recoup certain excess earnings received by Polycarpo, the recipient of a county pension, who had accepted employment with a State agency. On appeal by Polycarpo, CRAB, rejecting a contrary determination by an administrative magistrate of the division of administrative law appeals (DALA), determined that Polycarpo could not be a member of the State retirement system, but that she should not be required to repay the county board. CRAB's decision was affirmed following judicial review by a judge of the Superior Court, see G. L. c. 30A, § 14, and a timely appeal by the county board brings the case here. We believe that the retirement law vests in the county board, not in CRAB, the discretionary authority to relieve a pensioner of an obligation to repay. Assuming, without deciding, that CRAB could exercise appellate authority with respect to the question, nothing in the record supports a determination that the county board abused its discretion in this case. We accordingly reverse the portion of the judgment affirming CRAB on that issue.

1. *Background.* The underlying facts and the prior history are not disputed, the case presenting solely questions of law regarding the relative powers of CRAB and the county board. Polycarpo was employed by the town of Dartmouth, and was a member of the county retirement system, from September of 1958 to February of 1988, at which time, at age sixty-two, she retired and began to receive superannuation retirement benefits. In 1993, she accepted employment with the Southeastern Massachusetts Educational Collaborative (collaborative), which at that time was a private employer. In 1994, the collaborative became a State agency. Polycarpo was informed, in 1994, that she could either continue having the employer deduct from her compensation amounts for social security (the practice while the collaborative operated as a private entity), or join the State retirement system — advice that, as set forth below, turned out to be wrong.

Polycarpo elected the latter and filed an enrollment form with the State board. She answered the questions on the form truthfully, disclosing that she previously had been employed by

a governmental entity and was currently receiving a pension. She became a member of the State retirement system in the latter part of 1994, and the collaborative deducted from her compensation the ordinary amounts representing employee retirement contributions. Between October 1, 1995, and April 30, 2001, Polycarpo earned approximately $45,000 more than she would have earned during that period had she continued in her previous employment with the town of Dartmouth.

In April, 2001, Polycarpo, anticipating retirement from the collaborative, contacted the State board and requested information regarding her benefits. It was then that the State board awoke to the realization that Polycarpo, as a pensioner receiving benefits from a county system, should not have been enrolled in the State retirement system in 1994. See G. L. c. 32, § 91(*d*). Shortly thereafter, the State board refunded to Polycarpo her accumulated deductions totaling $10,276.50, and removed her from the State retirement system. When it was brought to the attention of the county board that Polycarpo had, while receiving retirement benefits, earned more than she would have earned had she remained in municipal employment, the county board determined that she had received excess earnings of $45,389.93, see G. L. c. 32, § 91(*a*), (*b*), and voted to recoup that amount, see G. L. c. 32, § 91(*c*). See also *Flanagan* v. *Contributory Retirement Appeal Bd.*, 51 Mass. App. Ct. 862, 866-868 (2001). The county board refused to waive repayment by Polycarpo, see G. L. c. 32, § 20(5)(*c*)(3), and, effective September 1, 2001, commenced the recoupment process by withholding the county retirement benefits that Polycarpo would otherwise have received.

Polycarpo filed separate appeals with CRAB against the State board and the county board. See G. L. c. 32, § 16(4). She sought an order against the State board compelling her readmission as a member of the State retirement system, as well as reimbursement of any amounts recouped by the county board. Against the county board, Polycarpo sought a determination that she was entitled to a waiver by that board of any recoupment of excess earnings, and an order to that effect by CRAB. The appeals were referred by CRAB to DALA, see G. L. c. 7, § 4H, and consolidated for hearing and decision. A DALA administrative

magistrate ruled that no administrative remedies were available. Specifically, the administrative magistrate determined that (1) Polycarpo could not, in the circumstances, become a member of the State retirement system, and thus the State board was required to refund the deductions taken in error; and (2) in the absence of a waiver granted by the county board, neither the State board nor DALA had the authority to relieve Polycarpo of her obligation to repay excess earnings she had received.[2]

Polycarpo filed a timely appeal of the DALA decision with CRAB. CRAB adopted the findings of the administrative magistrate, but rejected her conclusion that no administrative remedy existed. Instead, CRAB, finding that the fault was that of the State board, determined that Polycarpo should not be harmed by the mistakes of others, and reversed the decision of the county board to recoup her excess earnings.[3] As indicated, CRAB's decision was affirmed on judicial review in the Superior Court, and the county board appeals.

2. *Discussion.* While we understand CRAB's motivation to decide the case on essentially equitable principles on behalf of a sympathetic retiree, we conclude that its decision is inconsistent with the public employee retirement law, and that the analysis of the administrative magistrate was essentially correct. A pivotal concern of the retirement law is that, except in precisely limited circumstances, a member of the public employee retirement system who is receiving retirement benefits not accept other public employment and not become eligible for a separate pension. Thus, G. L. c. 32, § 91(*a*), as amended through St. 1996, c. 450, provides, in relevant part, that "[n]o person[,] while receiving a pension, disability pension or retirement allowance from the commonwealth, or from any county, city, town or district, shall, after the date of [her] retirement[,] be paid for any service rendered to the commonwealth or any

---

[2]The administrative magistrate rejected the contention of the State board and the county board that Polycarpo's appeals were untimely, concluding that the time for filing appeals was tolled by a failure to notify Polycarpo of her appellate rights. The ruling is not challenged in this appeal.

[3]CRAB affirmed the portion of the DALA decision that upheld the rulings of the State board that Polycarpo lawfully could not become a member of the State retirement system and that her retirement contributions should be returned.

county, city, town or district . . . ." The prohibition against governmental pensioners collecting compensation from the same governmental entity is of long standing, having existed in Massachusetts at least since 1913. See *Flanagan* v. *Contributory Retirement Appeal Bd.*, 51 Mass. App. Ct. at 865. By statute in 1941, see St. 1941, c. 670, § 24, the prohibition was expanded to bar the receipt of compensation and pension benefits from governmental entities generally. *Ibid.*

General Laws c. 32, § 91(*a*), contains a number of exceptions to that general policy for retirees occupying certain governmental positions, none of which apply to Polycarpo. The following paragraph, § 91(*b*), however, sets forth a blanket exception that is applicable. Thus, one in her position, i.e., one retired and receiving a pension from a governmental unit under G. L. c. 32, or any other law of the Commonwealth, "may . . . be employed in the service of the commonwealth, county, city, town, district or authority for not more than nine hundred and sixty hours in the aggregate, in any calendar year." G. L. c. 32, § 91(*b*), as amended by St. 1981, c. 711. This authorization is followed immediately by a limitation, specifically, "that the earnings therefrom when added to any pension or retirement allowance [she] is receiving do not exceed the salary that is being paid for the position from which [she] was retired." *Ibid.* The employee is also ineligible to become a member of any retirement system associated with her new employment. See G. L. c. 32, § 91(*d*). The statute reflects a clear policy that an employee of a governmental unit in Massachusetts generally may not retire, receive a pension, accept employment elsewhere in the government, and, by combining her pension and her new compensation, make more money than if she had not retired.

A conclusion that Polycarpo contributed in part to the confusion regarding her benefits follows from her disregard of the provisions of G. L. c. 32, § 91(*c*), which required that she report to her new employer (in her case, the collaborative, when it became a State agency) her time worked and her earnings received therefrom in the course of a calendar year.[4] It is a

---

[4]General Laws c. 32, § 91(*c*), as appearing in St. 1983, c. 636, § 17, provides, in this regard, that "[e]ach person referred to in paragraph (b) shall certify to [her] employer and the treasurer or other person responsible for the

violation to be employed for more than 960 hours in a calendar year. See G. L. c. 32, § 91(c). Furthermore, "if the earnings [from the employee's new employment] exceed the amount allowable under paragraph (b) [i.e., more than she would have earned had she remained employed in her former position with the town of Dartmouth], [the employee] shall return to the appropriate treasurer or other person responsible for the payment of compensation all such earnings as are in excess of said allowable amount." G. L. c. 32, § 91(c), as appearing in St. 1983, c. 636, § 17. We have already determined that, in the absence of a return of such amounts to the employing agency, the excess earnings may be recovered by the retirement board that pays the employee his pension. See *Flanagan* v. *Contributory Retirement Appeal Bd.*, 51 Mass. App. Ct. at 866-868.

It is not disputed that Polycarpo received, between 1995 and 2001, earnings from her employment by the collaborative that exceeded by approximately $45,000 what she would have earned from her previous employment had she not retired. She was obligated to repay that excess, see G. L. c. 32, § 91(c), unless relief was available elsewhere in the retirement law. Nor is it an adequate answer that the State board misled her, or that the collaborative never sought to ascertain that she had excessive earnings. General Laws c. 32, § 91(c), places the burden on the retiree ("Each person . . . shall certify to [her] employer . . . the number of days or hours which [she] has been employed in any such calendar year and the amount of earnings therefrom . . ."). Furthermore, Polycarpo was on notice by virtue of the statute that her receipt of retirement benefits came with the condition that additional earnings from government employment would be limited. We observe as well that, whatever the errors of the State board, they do not alter the fact that Polycarpo was neither entitled to earn the level of compensation that she received from the collaborative, nor entitled to become a member of the State retirement system.

payment of the compensation for the position in which [she] is to be employed, the number of days or hours which [she] has been employed in any such calendar year and the amount of earnings therefrom . . . ."

Thus, Polycarpo lost, as a result of the State board's errors, no benefits that she was legally entitled to receive.[5]

We turn, then, to the question whether the retirement law provides any basis for Polycarpo to avoid the obligation under G. L. c. 32, § 91(*c*), to repay her excess earnings. We are not persuaded by the judge's observation that this "is exactly the type of case that G. L. c. 32, § 20(5)(*c*)(2), was created to correct" or her application of that section to this case.

The section provides, in relevant part, that "[w]hen an error exists in the records maintained by the system or an error is made in computing a benefit and, as a result, a member . . . receives from the system more or less than the member . . . would have been entitled to receive had the records been correct or had the error not been made, the records or error shall be corrected *and as far as practicable, . . . future payments shall be adjusted so that the actuarial equivalent of the pension or benefit to which the member or beneficiary was correctly entitled shall be paid*" (emphasis supplied). G. L. c. 32, § 20(5)(*c*)(2), as appearing in St. 2000, c. 159, § 91. This section effectively acknowledges that the retirement law is a complicated combination of various legislative efforts occurring at different times and for different purposes, that it is difficult to administer, and that it is inevitable that mistakes in implementation will be made. The language reflects a policy that neither a member nor a retirement system shall be prejudiced by record-keeping or calculation errors, and that, in such circumstances, benefits shall, if "practicable," be adjusted to correct the mistake. General Laws c. 32, § 20(5)(*c*)(2), is not a forgiveness statute. To the extent the section is applicable at all to the present dispute, it authorizes exactly what has taken place.

A closer question arises with respect to the relative powers of the county board and CRAB under G. L. c. 32, § 20(5)(*c*)(3). That section, unlike § 20(5)(*c*)(2), authorizes forgiveness, in certain circumstances, of an obligation on the part of a pensioner

---

[5]Polycarpo's claim that she lost the opportunity to receive Social Security benefits in connection with her State employment by the collaborative seems dubious given that she was already receiving a governmental pension. Even were she to have lost such benefits, however, our analysis would not be altered.

to make payments to the retirement system. The section provides: "(3) At the request of a member . . . who has been determined to have been paid amounts in excess of those to which [she] is entitled or at the request of a member who has been determined to owe funds to the retirement system, the board may waive repayment or recovery of such amounts provided that: (i) the error in any benefit payment or amount contributed to the system persisted for a period in excess of one year; (ii) the error was not the result of erroneous information provided by the member . . . ; and (iii) the member . . . did not have knowledge of the error or did not have reason to believe that the benefit amount or contribution rate was in error." G. L. c. 32, § 20(5)(c)(3). No party to the proceeding contends that Polycarpo failed to qualify for relief under any of the three conditions (although her satisfaction of the third requirement might be questioned given that the statute itself arguably placed her on notice that excess earnings had to be repaid). In any event, we proceed on the assumption that Polycarpo was eligible for relief under G. L. c. 32, § 20(5)(c)(3), if the county board chose to grant it.

The county board denied the requested relief, and on appeal by Polycarpo, CRAB reversed and ordered that Polycarpo's excess earnings not be recouped. At the same time, CRAB affirmed the decision of the State board that Polycarpo could not become a member of the State retirement system, and that her contributions to that system would be refunded.[6] Suggesting that Polycarpo was blameless (she "fully disclosed her status and the State [board] nevertheless accepted her as a member") — a finding that, as indicated above, is not entirely justified — CRAB concluded that the State board was wholly responsible for the mistake; that Polycarpo should not be victimized thereby; and that the county board should be precluded from recouping the amount in question. Thus, applying what are essentially equitable principles on behalf of Polycarpo, CRAB effectively

---

[6]In one sense, the decision constituted a double recovery for Polycarpo, given that she was enabled to retain all of her earnings from the collaborative, including excess earnings for retirement law purposes, without contributing to the State retirement system or even offsetting the State retirement refund against the excess earnings she had received.

ordered the county board to pay for the error of the State board. We believe CRAB's authority in this regard is, at best, doubtful.

Assuming, as we do, that Polycarpo satisfied the three criteria established by the statute for eligibility for relief, the statute provides that "the board may waive repayment or recovery of such amounts." G. L. c. 32, § 20(5)(c)(3). The board referred to is the board that supervises the retirement system that pays benefits to the member in question, in this case, the county board. See G. L. c. 32, § 20(5)(a). The authority granted that board is permissive, not mandatory. Thus, the county board is entitled to deny, as well as to grant, relief. The power to do so is logically vested in the administrative agency that actually operates the system affected, that is most likely to be familiar with relevant conditions and circumstances, and whose system will absorb the impact of a decision not to recoup.

As indicated, we are not convinced that the decision of the county board to grant or deny relief under G. L. c. 32, § 20(5)(c)(3), is reviewable by CRAB. We believe that, by vesting in the county board permissive authority to exempt a member from what would otherwise be her obligation to repay excess earnings, the Legislature expected that the final decision would be made at that level. That CRAB has general jurisdiction to hear appeals from decisions of retirement boards, see G. L. c. 32, § 16(4), does not necessarily mean that CRAB is entitled to review a decision that the Legislature intended be made by a different agency. We are mindful that the retirement law is complex, and that CRAB's interpretations of the retirement statutes are entitled to respect. See *Namay* v. *Contributory Retirement Appeal Bd.*, 19 Mass. App. Ct. 456, 463 (1985). But where a question of law is involved, we act de novo, see *Raytheon Co.* v. *Director of the Div. of Employment Security*, 364 Mass. 593, 595 (1974), and we are not bound by what we believe is an agency's erroneous interpretation of its statutory authority, see *Lexington Educ. Assn.* v. *Lexington*, 15 Mass. App. Ct. 749, 755 (1983).

Even assuming, however, that CRAB were empowered under G. L. c. 32, § 16(4), to act on appeals with respect to decisions of this nature, it is clear that such a review would be limited to the question whether the county board abused its discretion. It

is a discretionary power that has been given to that board ("the board may waive repayment," see G. L. c. 32, § 20[5][c][3]), and if CRAB has any authority with respect to the decision at all, it is not empowered merely to substitute its judgment for that of the county board. To the extent that CRAB concluded that the county board abused its discretion in denying Polycarpo relief (CRAB's decision is not couched in abuse of discretion terms), CRAB committed an error of law. See G. L. c. 30A, § 14(7)(c). Polycarpo earned amounts that she was not entitled to earn while a county pensioner. She failed in her obligation to report to the collaborative the fact that she had excess earnings; had she done so, it is likely that the confusion would have been straightened out at an early stage. She has lost nothing from either the State or county retirement system to which she is entitled, and the granting of relief under G. L. c. 32, § 20(5)(c)(3), would constitute a considerable windfall to her. We see no basis on which CRAB lawfully could have concluded that the county board abused its discretion.

3. *Conclusion.* The judgment is reversed insofar as it affirmed CRAB's order that Polycarpo's excess earnings not be recouped by the county board. A new judgment shall enter declaring that the county board may lawfully recoup the amount in question. In all other respects, the judgment is affirmed.

*So ordered.*