The Worcester Regional Retirement Board (WRRB) appeals from a Superior Court judgment affirming a decision of the Contributory Retirement Appeal Board (CRAB). See G. L. c. 30A, § 14 (7). WRRB claims error in CRAB's interpretation of G. L. c. 32. We affirm.
1. Standard of review. "Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and courts must interpret the statute so as to render the legislation effective, consonant with reason and common sense." Rotondi v. Contributory Retirement Appeal Bd., 463 Mass. 644, 648 (2012), quoting Cote-Whitacre v. Department of Pub. Health, 446 Mass. 350, 358 (2006) (Spina, J., concurring). Although questions of law are reviewed de novo, we " 'typically defer to CRAB's expertise and accord " 'great weight' to [its] interpretation and application of the statutory provisions it is charged with administering" ' (citation omitted)." Retirement Bd. of Stoneham v. Contributory Retirement Appeal Bd., 476 Mass. 130, 134 (2016), quoting Weston v. Contributory Retirement Appeal Bd., 76 Mass. App. Ct. 475, 479 (2010). If CRAB's interpretation of the notoriously complex retirement law is reasonable, it should be honored by the courts. See Arlington Contributory Retirement Bd. v. Contributory Retirement Appeal Bd., 75 Mass. App. Ct. 437, 441 (2009).
2. Background. On November 1, 2010, Thomas Clawson, a vested member of the Worcester Retirement System (WRS), retired from his employment with the city of Worcester (city). At the time, Clawson was also a member of the Worcester Regional Retirement System (WRRS) arising from his concurrent employment as an elected member of the town of Millbury's (town) school committee.[3] In December, 2009, Clawson had tendered a check to WRRB, seeking to buy back prior noncontributing service in order to vest in that system and thereby avoid the looming restriction on enhanced retirement benefits. See G. L. c. 32, § 5 (2) (e ), inserted by St. 2009, c. 21, § 7.[4] WRRB improperly rejected the check leading to administrative proceedings that ended favorably to Clawson in 2011. If WRRB had granted Clawson's request and accepted his check, Clawson would have vested in WRRS in November, 2010; and WRS would have asked WRRB to transfer Clawson's retirement account to WRS.
Once Clawson completed his service purchase in May, 2011, he vested in WRRS, deemed effective December 31, 2009. When WRRB learned of Clawson's retirement on June 9, 2011, it informed Worcester Retirement Board (WRB) that WRB had retired Clawson, an active member of WRRS, "in error" and requested a transfer of his retirement account to WRRB.[5] See G. L. c. 32, § 3 (7) (b ) and (d ). Five days later, Clawson refunded all the compensation he had received from the town since the date of his retirement ($1,135.89) and requested that the town not pay him for the duration of his term. Thereafter, WRRB failed to respond to Clawson's request to transfer his account to WRS and to return his postretirement deductions. Following Clawson's appeal of WRRB's inaction, an administrative magistrate of the Division of Administrative Law Appeals (DALA) in his decision sided with WRRB, a decision reversed on further appeal to CRAB. See G. L. c. 32, § 16 (4).
3. Discussion. We conclude, as did the motion judge, that CRAB's interpretation and harmonization of the statutory provisions in issue were reasonable. As CRAB fairly recognized, G. L. c. 32, § 3 (7) (b ), standing alone, seems to support WRRB's position that Clawson's retirement from WRS was ineffective because he remained in service for the town.[6] However, another discordant statutory provision permits a member to "continu[e] in service in any governmental unit" at retirement as long as the requirements of G. L. c. 32, § 91, are met.[7] G. L. c. 32, § 3 (7) (d ) ("In no event shall any member be eligible to receive a retirement allowance from one system while continuing in service in any governmental unit, except as provided for in section ninety-one"). CRAB was warranted in reconciling these provisions to find that where, as here, a retiree's hours and compensation would fall below statutory limits, he could, as expressly permitted by § 3 (7) (d ), remain employed at the second position provided that he terminated his membership in that retirement system. See G. L. c. 32, § 91 (d ). As CRAB pointed out, for some public employees, reappointment would be impractical or impossible. CRAB could logically have reasoned that the Legislature would not require the "empty gesture of a resignation and re-employment" for a retirement to become effective.
No legislative policy or intent is violated or thwarted by CRAB's interpretation permitting, within limits, the continuation of part-time public service at retirement.[8] See Bristol County Retirement Bd. v. Contributory Retirement Appeal Bd., 65 Mass. App. Ct. 443, 446-447 (2006). A blanket rule requiring the termination of all government service would potentially dissuade retirees from continuing their public service. This result cannot be what the Legislature had in mind in imposing the statutory restriction. Mindful of CRAB's expertise in this difficult area of law, we discern no error in CRAB's conclusion that § 3 (7) (b ) was inapplicable in the circumstances of this case.
CRAB held in the alternative that even if Clawson did not qualify for the § 91 (b ) exception, Clawson effectively terminated his "service" as of the date of his retirement, curing any § 3 (7) (b ) violation.[9] We agree. As CRAB could properly have reasoned, Clawson's failure to resign his WRRS membership and his paid town employment in November, 2010, was caused, in significant part, by WRRB's error.[10] Shortly after prevailing against WRRB in his first appeal, Clawson returned all postretirement compensation to the town and waived compensation for the remainder of his term. See G. L. c. 32, § 1 (defining "[s]ervice" as "service as an employee in any governmental unit for which regular compensation is paid"). CRAB was warranted in finding that at this point, Clawson's employment should have been deemed terminated as of November 1, 2010. Clawson's retirement from WRS was properly deemed valid on this basis as well.
But for WRRB's mistake, the transfer of Clawson's account could have been effected at the time of Clawson's retirement from WRS. CRAB acted within its authority in ordering WRRB to correct the error existing in its record by (1) cancelling Clawson's membership effective prior to November 1, 2010; (2) returning all postretirement deductions to Clawson; and (3) transferring his account and membership to WRB. See G. L. c. 32, § 20 (5) (c ) (2) ; Bristol County Retirement Bd. v. Contributory Retirement Appeal Bd., 65 Mass. App. Ct. at 449 ("[S]ection [20 (5) (c ) (2) ] effectively acknowledges that the retirement law is a complicated combination of various legislative efforts occurring at different times and for different purposes, that it is difficult to administer, and that it is inevitable that mistakes in implementation will be made").
Finally, WRRB argues that CRAB's decision should be reversed because it improperly considered a letter regarding Clawson's ineligibility for health insurance as a WRRS retiree.[11] Even if CRAB erred or abused its discretion by denying WRRB's motion to strike, CRAB included the letter in the record for the limited purpose of background information. CRAB specifically agreed with WRRB that the issue of Clawson's entitlement to health insurance "has no bearing" on any legal issue in the case. CRAB's lengthy substantive analysis does not mention the letter, confirming the point. Any error was harmless. See Catlin v. Board of Registration of Architects, 414 Mass. 1, 6-7 (1992).
Judgment affirmed.

As a full-time career employee of the city, Clawson had accumulated thirty-one years of creditable service. He earned less than $5,000 per year for his part-time school committee work.

That statutory provision prohibited individuals with dual membership from transferring and combining their accumulated funds and service into one system. By its plain language, it did not apply to any member who was vested in two or more systems as of January 1, 2010.

After his retirement, Clawson continued to serve on the Millbury school committee until the end of his term in April, 2012. Clawson did not cancel his membership in WRRS. WRRB continued to take monthly retirement deductions of $11.36 from his compensation.

General Laws c. 32, § 3 (7) (b ), provides, in relevant part, "No pension or retirement allowance shall become effective on account of any such person's membership in one system until the date the member terminates his service in any other governmental unit."

General Laws c. 32, § 91 (b ), provides, in relevant part, that "any person who has been retired and who is receiving a pension or retirement allowance ... may ... be employed in the service of the commonwealth, county, city, town, district or authority ... for not more than nine hundred and sixty hours in the aggregate, in any given calendar year; provided that the earnings therefrom when added to any pension or retirement allowance he is receiving do not exceed the salary that is being paid for the position from which he was retired." The Legislature increased the limit on postretirement earnings, effective April 2, 2012. See St. 2011, c. 176, §§ 50 and 64.

Clawson himself engaged in no subterfuge and certainly obtained no windfall to the detriment of the public fisc. We are not persuaded that CRAB's decision will have wide-ranging negative effects.

WRRB did not address this alternative conclusion in its brief.

On appeal, WRRB argues that CRAB's "finding" that Clawson's "original plan" was to retire from both positions simultaneously was unsupported by substantial evidence. This argument misstates CRAB's actual "finding." CRAB concluded that if Clawson's "service purchase had been accepted at the time of [his] original application in December 2009, he would have been vested in both systems as of the date of his retirement, and would have carried out his original plan to take advantage of the pre-2009 dual membership provisions."

Generated after the administrative magistrate issued his decision, the letter was provided to CRAB as part of Clawson's supplementation of his notice of objection to DALA's decision.