RODNEY WESTON *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD & another.[1]

No. 09-P-475.

Suffolk. November 5, 2009. - March 18, 2010.

Present: DUFFLY, GREEN, & KATZMANN, JJ.

*School and School Committee,* Retirement benefits. *Public Employment,*
Retirement benefits. *Retirement. Contributory Retirement Appeal Board.*
*Administrative Law,* Judicial review, Agency's interpretation of statute.
*Words,* "Teacher."

The term "teacher" as it appears in G. L. c. 32, § 3(4), encompasses employ-
ment in one of the listed occupations appearing in the definition of teacher
in G. L. c. 32, § 1, by any day school in another State that is under
exclusive public control and supervision, regardless of whether the employ-
ment (or control or supervision) is by a school committee or a board of
trustees; therefore, a special needs teacher's prior employment by a county
department of health in another State, as a teacher at an education center
for children with special needs, entitled him to purchase retirement credit
for the period during which he was so employed. [477-480]

CIVIL ACTION commenced in the Superior Court Department on
July 18, 2007.

The case was heard by *Geraldine S. Hines,* J., on a motion
for judgment on the pleadings.

*Susan F. Horwitz* for the plaintiff.

*Robert G. Fabino* for Massachusetts Teachers' Retirement
System.

GREEN, J. After working for more than thirty years as a special
education teacher at Bourne High School, the plaintiff sought,
pursuant to G. L. c. 32, § 3(4), to purchase additional retire-
ment credit for additional service, from December, 1972, to
August, 1974, as a teacher in a "Daytime Development Center"
(DDC) providing education for children with special needs in

---

[1]Massachusetts Teachers' Retirement System.

Fairfax County, Virginia.[2] The Massachusetts Retirement Board denied his request, an administrative magistrate in the Division of Administrative Law Appeals (DALA) upheld that decision, and the Contributory Retirement Appeal Board (CRAB) summarily affirmed. A judge of the Superior Court issued a judgment on the pleadings on Weston's subsequent appeal under G. L. c. 30A, § 14, likewise affirming the denial. At issue is whether the fact that, during the time of his Virginia service, Weston was employed by the Fairfax County Department of Health rather than a "school committee or board of trustees" means that he was not a "teacher" within the meaning of G. L. c. 32, § 1, as appearing in St. 1957, c. 516, § 1, and therefore may not purchase additional retirement benefits for that period of employment. We conclude that the eligibility of his out-of-State service for retirement benefits is determined by the nature of the services he performed, and the nature of the institution in which he performed them, rather than the nature or structure of the governing body of the institution in which he taught (so long as the institution is under exclusive public control or supervision). We accordingly reverse the judgment.

*Background.* We summarize the facts, as found by the DALA administrative magistrate.[3] Weston has been a special needs teacher at Bourne High School since the fall of 1974. Prior to teaching in Bourne, Weston was employed by the Department of Health for Fairfax County, Virginia, from December 20, 1972, to August 2, 1974. While employed by the Department of Health, Weston worked as a teacher in the DDC. The DDC offered a program to assist children with intellectual disabilities and/or severe handicaps with activities of daily living. By the early 1970s, the DDC provided not only training but education. Frequently, children attending the DDC could transfer to the public schools due to the progress they had made at the DDC.

Between 1972 and 1974, the position of the director of the DDC was redefined from a nurse to a certified teacher of special

---

[2]General Laws c. 32, § 3(4), as amended by St. 1951, c. 505, § 1, inter alia, authorizes eligible teachers to purchase retirement credit for service rendered in any other State as a teacher "in the public day schools or any other day school under exclusive public control or supervision."

[3]The parties do not challenge the findings of fact made by the administrative magistrate, and the record contains substantial evidence to support them.

education with a focus on child development. The director supervised all DDC employees and reported to the director of health, who, in turn, reported to the county executive.

The DDC consisted of nine classrooms, each with between five and ten students. It operated on the same calendar as the public schools of Fairfax County, on school days that began at 8:00 A.M. and continued until 3:00 P.M. It had a "PTA." The DDC was open to the public and served children from throughout Fairfax County. Children arrived at the DDC on county buses.

In December, 1972, Weston had a degree in psychology. He responded to an advertisement seeking a teacher of severely handicapped students and was interviewed for the position by the DDC principal and her assistant, who was an educational consultant. During his employment by the DDC, Weston had a class of nine students between the ages of nine and sixteen, four of whom were nonambulatory. He was assisted by a teacher's aide. Weston developed lesson plans and taught social skills, reading, language arts, math, art, and physical education. He held regular parent-teacher conferences. Though he took professional development courses in 1973, he was not certified in special education. However, such certification was not required at the time.[4]

*Discussion.* Under G. L. c. 32, § 3(4),

" '[a]ny member in service[5] . . . who is employed in a teaching position . . . in a school or college . . . who had rendered service in any other state for any previous period as a teacher . . . in the public day schools or other day school under exclusive public control and supervision . . . may, before the date any retirement allowance becomes effective for him, pay into the annuity savings fund of the system . . . an amount equal to that which would have been withheld as regular deductions from his regular compensation for such previous period . . . had such service been rendered in a public school of the common-

[4]According to Weston's testimony, he was likewise not certified when he was hired to teach special education at Bourne High School, though his hiring for that position without certification apparently required a waiver.

[5]A "member in service" is an employee who has not yet retired and who is included, inter alia, in the teachers' retirement system. See G. L. c. 32, § 3(1)(i).

wealth and had he been a member of the teachers' retirement system during the period such service was rendered."

Upon making such payment, the teacher receives the same credit toward retirement benefits for the period of out-of-State employment as he would have received had he been employed as a public school teacher for that period within the Commonwealth. *Ibid.*

In concluding that Weston's Virginia service was ineligible for purchased retirement credit under § 3(4), the administrative magistrate relied principally on the fact that, though "Weston was clearly serving as a teacher while at DDC, he was employed by the Department of Health, not a school committee or board of trustees." Consequently, she reasoned, he did not meet the definition of a "teacher" set forth in G. L. c. 32, § 1.[6,7]

We previously have looked to the definition of "teacher" set forth in G. L. c. 32, § 1, to determine eligibility of out-of-State service to support a teacher's request to purchase retirement benefits. See *Mackay* v. *Contributory Retirement Appeal Bd.*, 56 Mass. App. Ct. 924, 925 (2002). In *Mackay*, we considered two employees with out-of-State service as a "school social worker" and a "school adjustment counselor," respectively. Both sought to purchase retirement credit for their prior service but were denied because their out-of-State service occurred before the definition of "teacher" was amended to include those two occupations. In holding that both were eligible, we held that their eligibility for retirement benefits, or to purchase additional retirement credits, was determined by their status as a teacher on the date of the purchase request, and not on whether their out-of-

---

[6]Under that section, a "teacher" is "any person who is employed by one or more school committees or boards of trustees or by any combination of such committees and boards on a basis of not less than half-time service as a teacher, school psychologist, school psychiatrist, school adjustment counselor or school social worker . . . , director of occupational guidance and placement . . . , principal, supervisor or superintendent in any public school as defined in this section . . . ." G. L. c. 32, § 1, as amended through St. 1990, c. 110, § 1.

[7]As we have observed, CRAB summarily affirmed the decision of the administrative magistrate. In her memorandum of decision on the parties' motion for judgment on the pleadings, the Superior Court judge essentially adopted the reasoning of the administrative magistrate.

State service fell within the definition of a "teacher" at the time of the service. *Id.* at 926. As such, *Mackay* considered whether the expanded definition of teacher applied to periods of service that preceded adoption of the expanded definition, rather than the proper construction of the statutory definition itself.

The present case, by contrast, presents a question of the proper construction of the statutory definition. "We typically defer to CRAB's expertise and accord ' "great weight" to [its] interpretation and application of the statutory provisions it is charged with administering.' *Lisbon* v. *Contributory Retirement Appeal Bd.*, 41 Mass. App. Ct. 246, 257 n.10 (1996). But '[j]udicial deference to an agency's action "is not a principle of abdication," ' *DiNatale* v. *Contributory Retirement Appeal Bd.*, 39 Mass. App. Ct. 401, 404 n.2 (1995), quoting from *Board of Educ.* v. *School Committee of Amesbury*, 16 Mass. App. Ct. 508, 514 (1983), and ours is the power to determine pure questions of law." *Mackay, supra.*

There are several problems with the construction adopted by the administrative magistrate. First, its narrow and literal application of the statutory definition creates tension with the essential purpose of § 3(4) to address periods of out-of-State service. That is because G. L. c. 32, § 1, defines the term "teacher" by reference to employment in "any public school." See note 6, *supra.* But the same section defines a "public school" as "any day school conducted *in the commonwealth* under the superintendence of a duly elected school committee and also any day school conducted under the provisions of sections one to thirty-seven inclusive of chapter seventy-four"[8] (emphasis supplied). The literal application of the definitions set forth in § 1 would accordingly render meaningless the entirety of § 3(4) insofar as the latter section seeks to extend benefits for service as a teacher in another State, because the definitions in § 1 would exclude from the term "teacher" any period of service in a school outside the Commonwealth. In addition, the construction applied by the administrative magistrate would render superfluous the portion of § 3(4) that recognizes as eligible for retirement credit service as a teacher "in any day school under exclusive public control and

---

[8]General Laws c. 74, §§ 1-74, address vocational-technical schools.

supervision."[9] When presented with a question of statutory construction, "[w]e interpret the statute so as not to 'produce an illogical result,' *ROPT Ltd. Partnership* v. *Katin*, 431 Mass. 601, 603 (2000), and to 'give meaning to each word in the legislation.' *International Org. of Masters* v. *Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984)." *Sperounes* v. *Farese*, 449 Mass. 800, 807 (2007). The construction applied by the administrative magistrate fails both tests and is in error.

We conclude that the term "teacher" as it appears in G. L. c. 32, § 3(4), encompasses employment in one of the listed occupations appearing in the definition of teacher in G. L. c. 32, § 1, by any day school in another State that is under exclusive public control and supervision, regardless of whether such employment (or such control or supervision) is by a school committee or a board of trustees. Since the findings of fact entered by the administrative magistrate establish that Weston was employed full-time as a teacher by a day school in Virginia that was under exclusive public control and supervision, he is entitled to purchase retirement credit for the period during which he was so employed. The judgment of the Superior Court is reversed, and a new judgment shall enter remanding the matter to CRAB for the entry of a decision in favor of the plaintiff.

*So ordered.*

---

[9]Moreover, woodenly literal reliance on the statutory definition of teacher without reference to any other source would fail by reason of its own internal circularity; the definition defines a "teacher" by reference to employment as a "teacher, school psychologist, school psychiatrist" and other listed occupations. But the first occupation contained in that list is that of a teacher — the very occupation the provision seeks to define.