NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12098


RETIREMENT BOARD OF STONEHAM  vs.  CONTRIBUTORY RETIREMENT
APPEAL BOARD & another.[1]



Middlesex.     October 5, 2016. - December 22, 2016.

Present:  Gants, C.J., Botsford, Lenk, Hines, Gaziano, Lowy, &
Budd, JJ.



Retirement.  Municipal Corporations, Retirement board.  Public
     Employment, Retirement.  Contributory Retirement Appeal
     Board.



     Civil action commenced in the Superior Court Department on
February 6, 2014.

     The case was heard by Robert L. Ullmann, J., on motions for
judgment on the pleadings.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Douglas S. Martland, Assistant Attorney General, for
Contributory Retirement Appeal Board.
     Thomas F. Gibson for Christine DeFelice.
     Michael Sacco for the plaintiff.



_____

     [1] Christine DeFelice.

LOWY, J.  This case requires us to answer two questions: (1) whether a municipal retirement board possesses absolute discretion to terminate a part-time employee's membership in a retirement system to which that board has granted the employee membership; and (2) even if such a board does not have the power to terminate a part-time employee's membership, whether a "separation from [an employee's] service" under G. L. c. 32, § 3 (1) (a) (i), occurs when a part-time employee working two jobs for the same municipal employer ceases to work only one of those jobs.  We answer both questions in the negative and reverse the judgment of the Superior Court.

Background.  Christine DeFelice began working on a part-time basis for the Stoneham school department (department) in November, 2000.  In April, 2001, she took on a second part-time job with the department to fill a temporary vacancy, increasing her weekly workload from nineteen and one-half hours per week to over thirty hours per week for the ensuing nine weeks.  At the end of the nine-week period, DeFelice continued to work for the department on a part-time basis until at least June, 2009, only occasionally working more than nineteen and one-half hours per week.[2]

---

[2] It is not clear when DeFelice's employment with the department ended.  At oral argument, DeFelice's counsel indicated that DeFelice was no longer employed with the department.  The last date of employment clearly referred to by

In 2009, DeFelice sought retroactive membership in the Stoneham retirement system as an employee of the department, based on the nine-week period in 2001 during which she worked over thirty hours per week. Under the membership eligibility criteria for part-time employees established by the Stoneham retirement board (board) that were in effect during 2001, Stoneham employees were eligible for membership in the retirement system if they were scheduled to work more than thirty hours per week for a period of more than seven days.[3] Initially, the board denied DeFelice's membership application, because her increase in hours was temporary. In August, 2010, the board reconsidered its position and granted DeFelice retroactive membership in the Stoneham retirement system for the nine-week period in the spring of 2001, but denied her membership for the subsequent time during which she remained a part-time employee of the department. The board concluded that DeFelice was not eligible following the nine-week period because her weekly hours did not continue to satisfy the criteria.

---

the Division of Administrative Law Appeals is June 4, 2009. Because of the result we reach in this case, the date her employment with the department ended is not material.

[3] The board has since changed its eligibility requirements so that, as of April, 2010, non-full-time employees must be "permanently employed" for at least twenty hours per week and earn at least $5,000 annually in order to qualify for membership.

DeFelice appealed from the board's determination, seeking membership for the years she continued to work for the department as a part-time employee.[4]  The Contributory Retirement Appeal Board (CRAB) assigned the case to the division of administrative law appeals (DALA).  DALA determined that, once the board granted DeFelice membership, it could not unilaterally terminate her membership status.  DALA concluded that the statute governing membership in a public retirement system precluded the board, in the absence of statutorily specified exceptions, from terminating the membership of individuals who had been granted membership and continued working for the same municipal employer.  The board objected, arguing that it possessed authority to terminate the membership of non-full-time employees who failed to satisfy its membership criteria.  CRAB adopted DALA's factual findings and affirmed its decision.  The board sought review pursuant to G. L. c. 30A, § 14.  A judge in the Superior Court reversed CRAB's decision, and DeFelice appealed.  We transferred the case here by our own motion, and now reverse the judgment of the Superior Court.

Statutory scheme.  Massachusetts law permits a municipality to establish a contributory retirement system for the municipality's employees.  See G. L. c. 32, § 20 (4).  The law

_____

[4] The parties acknowledged during oral argument that DeFelice's benefit, upon her retirement, would be proportional to the service she provided as a part-time employee.

further provides for the establishment of municipal retirement boards to manage the retirement systems in a manner consistent with applicable laws. G. L. c. 32, § 20 (4) (b), (5) (b). Municipal retirement boards have the power to make rules and regulations "consistent with law," subject to approval by the public employee retirement administration commission. G. L. c. 32, § 20 (5) (b).

General Laws c. 32, § 3 (2), sets forth various criteria that establish "eligibility" for membership in a retirement system. For example, individuals who are "employees," and therefore "regularly employed,"[5] are generally eligible for membership. G. L. c. 32, § 3 (2) (a) (x). However, municipal retirement boards possess "full jurisdiction" to determine the eligibility of "part-time, provisional, temporary, temporary provisional, seasonal or intermittent employment or service of

---

[5] An "employee," as applicable to this case, is a person "who is regularly employed in the service of," and "whose regular compensation . . . is paid by," the Commonwealth or a political subdivision of the Commonwealth. G. L. c. 32, § 1. See Retirement Bd. of Concord v. Colleran, 34 Mass. App. Ct. 486, 489 (1993) (town employee was "regularly employed" during three-year period in which she continuously worked three hours per day). The board does not dispute that DeFelice was regularly employed throughout her employment with the department.

any employee in any governmental unit."[6]  G. L. c. 32,
§ 3 (2) (d).

Satisfying the eligibility criteria for membership does not
automatically confer membership upon an employee.  See G. L.
c. 32, § 1 (defining "member" as "any employee included in"
retirement system [emphasis added]).  See also Manning v.
Contributory Retirement Appeal Bd., 29 Mass. App. Ct. 253, 255
(1990) (non-full-time employee was not member of retirement
system in absence of determination by pertinent retirement
board).  Relevant to this case, an employee who is eligible to
become a member, but who fails or chooses not to do so, "may
apply for and be admitted to membership if [the employee is]
under the maximum [entry] age for [the employee's] group on the
date of [the employee's] application; provided, that during [the
employee's] present period of service [the employee] had
previously been eligible for membership" (emphasis added).
G. L. c. 32, § 3 (3).  In other words, the employee must have
continued working for the same municipal employer between the
time the employee became eligible for membership and the time
the employee submitted the late application for membership.

Once an eligible employee is included in a city or town's
retirement system, that employee becomes a "member" of the

---

[6] In this opinion, we refer to such employees as "non-full-time employees," and employees falling outside of the scope of this provision as "full-time employees."

system.  G. L. c. 32, § 1.  There are two types of membership:
"member in service" and "member inactive."  G. L. c. 32,
§ 3 (1) (a).  A member in service, the only membership type
relevant in this case, is "[a]ny member who is regularly
employed in the performance of [the member's] duties."  G. L.
c. 32, § 3 (1) (a) (i).  Once designated a member in service,
the member remains a member in service "until [the member's]
death or until [the member's] prior separation from the service
becomes effective by reason of [the member's] retirement,
resignation, . . . removal or discharge from [the member's]
office," or another statutorily specified circumstance.[7]  Id.

Standard of review.  Because this case involves the meaning
of G. L. c. 32, § 3, a pure question of law, we exercise de novo
review of CRAB's interpretation.  Rotondi v. Contributory
Retirement Appeal Bd., 463 Mass. 644, 648 (2012).  See Rosing v.
Teachers' Retirement Sys., 458 Mass. 283, 290 (2010).  Still, in
reviewing CRAB's decisions, courts "typically defer to CRAB's
expertise and accord '"great weight" to [its] interpretation and
application of the statutory provisions it is charged with

---

[7] The remaining statutory circumstances include effective
prior separation from the member's service by reason of "failure
of re-election or reappointment . . . or by reason of an
authorized leave of absence without pay other than as provided
for in this clause."  G. L. c. 32, § 3 (1) (a) (i).

administering'" (citation omitted).[8]  Weston v. Contributory
Retirement Appeal Bd., 76 Mass. App. Ct. 475, 479 (2010).  "We .
. . will reverse only if [CRAB's] decision was based on an
erroneous interpretation of law or is unsupported by substantial
evidence."  Foresta v. Contributory Retirement Appeal Bd., 453
Mass. 669, 676 (2009).  See G. L. c. 30A, § 14 (7) (c), (e).

Discussion.  The first question before the court is whether
the board's authority under § 3 (2) (d) to determine the
eligibility of non-full-time employees, such as DeFelice,
supersedes the provision in § 3 (1) (a) (i) establishing that
the status of a member in service "shall continue as such until
[the member's] death or until [the member's] prior separation
from the service becomes effective by reason of" one of the
statutory circumstances.  Second, if the board did not have the
absolute discretion to terminate DeFelice's membership, we must

_____

[8] Both CRAB and the board argue that their respective
interpretations of § 3 are entitled to deference.  As
Massachusetts courts have recognized CRAB's role in
administering G. L. c. 32, and the value of its expertise in the
complicated area of retirement law, we afford greater weight to
CRAB's interpretation in this case.  See, e.g., Weston v.
Contributory Retirement Appeal Bd., 76 Mass. App. Ct. 475, 479
(2010); Namay v. Contributory Retirement Appeal Bd., 19 Mass.
App. Ct. 456, 463 (1985).  Because "eligibility" is also used in
§ 3 regarding membership criteria that fall outside of the
board's "full jurisdiction" under § 3 (2) (d), adopting the
board's interpretation could have limiting effects on the
meaning of "eligibility" in circumstances outside the board's
jurisdiction.  See Commonwealth v. Hilaire, 437 Mass. 809, 816
(2002) ("When the Legislature uses the same term in the same
section, . . . the term should be given a consistent meaning
throughout").

determine whether DeFelice was nonetheless separated from her service as a result of a "removal or discharge" under § 3 (1) (a) (i) when she stopped working the second job that increased her weekly hours to a level that initially qualified her for membership.

1. _Interpretation of eligibility_. The first question is whether the board possessed discretion to terminate DeFelice's membership when she ceased to satisfy the board's eligibility requirements, even after it had granted her retroactive membership, effective April 23, 2001. The board contends that its "full jurisdiction" under § 3 (2) (d) means that it possesses an "absolute" power to determine the eligibility of non-full-time employees -- notwithstanding the proscription of § 3 (1) (a) (i) -- that once a member is afforded "member in service status," that status "shall continue" until the employee dies or one of the specified circumstances leads to the employee's "separation from . . . service." The board argues that the "more specific" authority it possesses over the eligibility of non-full-time employees supersedes § 3 (1) (a) (i).

CRAB argues that the board's jurisdiction over eligibility means only jurisdiction to set _initial_ eligibility criteria. The board's authority, CRAB contends, does not include the ability to revoke the membership of employees once granted,

because § 3 (1) (a) (i) specifies the circumstances pursuant to which membership can be terminated.

The language of the statute is the starting point for all questions of statutory interpretation. Rotondi, 463 Mass. at 648, quoting Hoffman v. Howmedica, Inc., 373 Mass. 32, 37 (1977). The effect given to statutory language should be consistent with its plain language. See id., citing Sullivan v. Brookline, 435 Mass. 353, 360 (2001). Courts must look to the statutory scheme as a whole. See Commonwealth v. Raposo, 453 Mass. 739, 745 (2009).

We accept CRAB's interpretation, because (1) it is consistent with the statute's plain language, (2) it is consistent with use of "eligibility" as applied to full-time employees in the same subsection of § 3, and (3) it avoids an unnecessary conflict between § 3 (1) (a) (i) and § (3) (2) (d).

First, the plain language of the statute supports CRAB's interpretation. Section 3 (1) (a) (i) specifies the circumstances in which a member's status as a "member in service" may be terminated. The statute explicitly defines "member" as "any employee included in" the applicable retirement system. G. L. c. 32, § 1. The definition of employee does not distinguish between full-time and non-full-time employees. See id. A member in service is "[a]ny member who is regularly employed in the performance of [the member's] duties," and a

member's status as a member in service "shall continue" until the occurrence of a statutorily specified event (emphasis added).  G. L. c. 32, § 3 (1) (a) (i).  Section 3 (1) (a) (i) applies to members, who may be full-time employees eligible for membership pursuant to statutory criteria, or non-full-time employees eligible pursuant to the action of a local retirement board under § 3 (2) (d).  See G. L. c. 32, §§ 1 and 3 (1) (a) (i), (2) (a) and (d).  The statutorily enumerated events supporting the termination of a member's status as a member in service do not include a member's subsequent failure to satisfy the eligibility criteria that led to that member's admission. See G. L. c. 32, § 3 (1) (a) (i).  Accordingly, § 3 (1) (a) (i) limits the board's authority over the continuing membership of non-full-time employees.

Second, limiting the board's power to the task of establishing only the initial eligibility criteria of non-full-time employees avoids interpreting the term "eligibility" inconsistently within § 3.  Section 3 (2) is titled "Eligibility for Membership,"[9] and § 3 (2) (a) sets forth twelve circumstances establishing a full-time employee's eligibility for membership in a retirement system.  Once a full-time employee becomes

_____

[9] Although a heading does not conclusively determine a statute's proper interpretation, it may nonetheless be a relevant factor.  Cf. Davis v. School Comm. of Somerville, 307 Mass. 354, 358-359 (1940) (rejecting interpretation based on heading, where heading conflicted with statutory language).

eligible under § 3 (2) (a) and then becomes a member in service, that employee's status as a member in service "shall continue" until one of the statutorily specified events occurs. See G. L. c. 32, § 3 (1) (a) (i). Because the statutorily specified events do not include a subsequent failure to satisfy the eligibility criteria, a member's status as a member in service continues even if the member ceases to satisfy the criteria that initially qualified the member for admission into the retirement system. See id. Therefore, in § 3 (2) (a), "eligibility" must refer only to whether an employee satisfies criteria for membership prior to the employee becoming a member. See G. L. c. 32, § 3 (1) (a) (i), (2) (a). Eligibility as used in § 3 (2) (d), a different paragraph of the same subsection, should not be given a different meaning. Commonwealth v. Hilaire, 437 Mass. 809, 816 (2002).

If eligibility means an individual's initial qualification, the provisions of § 3 (1) (a) (i) do not conflict with the board's "full jurisdiction" under § 3 (2) (d). The conflict only arises if one accepts the board's definition that its "full jurisdiction" over eligibility necessarily encompasses something more than the eligibility determination prior to the non-full-time employee's admission to membership. Because such an interpretation is not required by the statutory language and would create an unnecessary conflict between § 3 (1) (a) (i) and

§ 3 (2) (d), we decline to adopt it. See Raposo, 453 Mass. at 745 (courts must read statutory terms harmoniously); Fireman's Fund Ins. Co. v. Commissioner of Corps. & Taxation, 325 Mass. 386, 389 (1950) (rejecting statutory construction that would "bring two provisions of our own statutes into unnecessary conflict").

The board possesses full jurisdiction to determine when non-full-time employees become eligible for membership in the Stoneham retirement system. See G. L. c. 32, § 3 (2) (d). Once the board confers membership, however, it cannot override the explicit statutory mandate governing the duration of membership. See G. L. c. 32, § 3 (1) (a) (i). See also Galenski v. Erving, 471 Mass. 305, 311 (2015), quoting Cioch v. Treasurer of Ludlow, 449 Mass. 690, 699 (2007) ("[A] municipality may not enact a bylaw, policy, or regulation that is inconsistent with State law").

Lexington Educ. Ass'n v. Lexington, 15 Mass. App. Ct. 749, 752 (1983), is an example of the limitations on a municipality's otherwise broad discretion in light of an explicit statutory requirement. In that case, the statute at issue required municipalities participating in an applicable health insurance program to "purchase certain group insurance 'covering employees,'" and defined "employee" to include any person working at least twenty hours per week for a municipality. Id.

at 750-751, citing G. L. c. 32B, §§ 2 (d), 3.  Municipalities

had the authority to make a "final" determination of a person's

eligibility to participate in the insurance program.  See

Lexington Educ. Ass'n, supra at 752.  The Appeals Court

invalidated a municipality's rule that limited participation to

employees working at least twenty-five hours per week, because

the statute required municipalities to include individuals

working at least twenty hours per week.  Id.  Similarly, the

board's authority to determine when non-full-time employees may

become members in the Stoneham retirement system cannot

supersede § 3 (1) (a) (i)'s requirements regarding the duration

of membership.[10]

The Manning decision, upon which SRB relies for support, is

not analogous to this case.  In that case, the Appeals Court

held that a non-full-time employee did not automatically become

a member of a retirement system pursuant to § 3 (2) (a), and the

retirement board had not made any determination pursuant to

---

[10] The board relies on Shea v. Selectmen of Ware, 34 Mass.
App. Ct. 333, 335-337 (1993), in which the Appeals Court upheld
the authority of a municipality to terminate the ability of
employees working under twenty hours per week to participate in
the same type of health insurance plan at issue in Lexington
Educ. Ass'n, 15 Mass. App. Ct. 749.  However, that statute
contained no language comparable to § 3 (1) (a) (i), requiring
that the municipality "shall continue" providing insurance to
such employees until the occurrence of statutorily specified
events.  See G. L. c. 32, § 3 (1) (a) (i); Shea, supra (nothing
in text, purpose, or legislative history supported determination
that municipality's decision to provide insurance was
irreversible).

§ 3 (2) (d) that the employee was eligible to become a member. Manning, 29 Mass. App. Ct. at 254-255. Unlike the retirement board in Manning, the board granted DeFelice membership because it determined that she satisfied its eligibility requirement, based on the board's interpretation of its own rule.

CRAB also points out that permitting municipal retirement boards unilaterally to terminate a non-full-time employee's membership in a retirement system would subject such employees to a high degree of uncertainty. Indeed, if the board possessed the breadth of discretion it claims, non-full-time employees could lose their membership status whether they decreased their hours voluntarily or involuntarily, or whenever the board alters the criteria to exclude some non-full-time employees who had previously been granted membership. We do not believe that the Legislature intended to subject non-full-time employees to this level of unpredictability. See G. L. c. 32, § 3 (1) (a) (i) (status of member in service "shall continue" until specified events [emphasis added]). See also Galenski, 471 Mass. at 309, quoting Hashimi v. Kalil, 388 Mass. 607, 609 (1983) ("The word 'shall' is ordinarily interpreted as having a mandatory or imperative obligation"). Instead, by establishing the authority of municipal retirement boards to determine the eligibility of non-full-time employees at the outset, the Legislature gave such boards ample power to manage participation by non-full-time

employees in municipal retirement systems.  See G. L. c. 32, § 3 (2) (d).

Municipal retirement systems may well place systemic strain on municipal budgets.  The existing legislative framework provides a means for municipalities to address budget issues prospectively by controlling when and how non-full-time employees may, if at all, become members of the retirement systems.  Broader public policy decisions concerning municipal pensions rest with the Legislature.

2.  <u>Interpretation of separation from service</u>.  The board argues that, even if it does not have the authority to revoke a non-full-time employee's membership once granted, DeFelice was "removed" when she stopped working her second job at the end of the 2000-2001 school year.[11]  The board contends that "removal" is a statutorily specified circumstance under § 3 (1) (a) (i), meaning that it had the authority to terminate DeFelice's membership.  As the facts are not in dispute, the question turns on the interpretation of § 3 (1) (a) (i).  We again start with the language of the statute, giving due weight to CRAB's expertise.

---

[11] Although the board raised this issue below, CRAB did not address it.  We resolve the issue because, as the facts are undisputed, the parties raise an important matter of pure statutory interpretation.

Section 3 (1) (a) (i) provides that a member's status as a "member in service" continues until the member's "prior separation from the service becomes effective by reason of," among other things, "removal or discharge." The operative event is the separation from service. Id. A "removal or discharge" in and of itself does not terminate an individual's member in service status. See id.

DeFelice remained in service even after she stopped working her second job after the 2000-2001 school year. "Service" is generally defined, with no distinction between full-time and non-full-time employees, as "service as an employee in any governmental unit for which regular compensation is paid." G. L. c. 32, § 1. Following the nine-week period establishing her eligibility, DeFelice remained "in service" of the department in a non-full-time capacity for at least several years. See id. Therefore, the statutory requirements for terminating membership were not satisfied because no "prior separation from [DeFelice's] service" had occurred. See G. L. c. 32, §§ 1, 3 (1) (a) (i).

The board's reliance on Retirement Bd. of Attleboro v. School Comm. of Attleboro, 417 Mass. 24 (1994), is misplaced. That case involved another provision of G. L. c. 32 containing

the phrase "removal or discharge." Id. at 26-27.[12] To give effect to both terms, we concluded that a "removal" must mean "something less than a complete termination of the employment relationship" for purposes of certain procedural protections owed to members in service. Id. at 27. Unlike § 3 (1) (a) (i), however, the provision in that case did not hinge upon whether there had been a separation from service. Compare G. L. c. 32, § 3 (1) (a) (i) (member in service status "shall continue" until member's "prior separation from the service becomes effective by reason of," among other things, "removal or discharge"), with Retirement Bd. of Attleboro, 417 Mass. at 25 n.3 ("The removal or discharge of [certain] member[s] in service . . . shall not become effective unless and until a written notice thereof containing a fair summary of the facts . . . has been filed with the board"). Section 3 (1) (a) (i) is not satisfied even if DeFelice was "removed" when she stopped working her second job at the end of the 2000-2001 school year, because there was no separation from service that became "effective by reason of" that removal.

Conclusion. The board established a low threshold for membership in its retirement system and decided DeFelice satisfied that threshold when it granted her membership.

_____

[12] The language at issue in Retirement Bd. of Attleboro, supra, no longer appears in G. L. c. 32, § 16.

DeFelice continued working for the department after she received membership.  Therefore, she became a "member in service" and her status as such "shall continue" until her death or a separation from service pursuant to one of the statutorily specified circumstances in G. L. c. 32, § 3 (1) (a) (i).  Because she continued working for the same governmental employer, although at reduced hours, there was no "separation from [her] service." See id.  As a result, DeFelice remained a member in service during her continued part-time employment following the 2000-2001 school year, and was eligible to apply for retroactive membership.  See G. L. c. 32, § 3 (3) (allowing employee to obtain membership after date on which employee first became eligible during "present period of service" and if employee satisfies applicable age requirement).

We conclude that CRAB reasonably interpreted § 3.  We reverse the judgment of the Superior Court.  A new judgment is to be entered affirming the decision of CRAB.

So ordered.