NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12711

PLYMOUTH RETIREMENT BOARD  vs.  CONTRIBUTORY RETIREMENT APPEALS
BOARD & another[1]


Plymouth.     September 5, 2019. - December 3, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Cypher,
& Kafker, JJ.


Retirement.  Police, Retirement.  Municipal Corporations,
     Police, Retirement board.  Public Employment, Police,
     Retirement.  Statute, Construction.  Contributory
     Retirement Appeal Board.



     Civil action commenced in the Superior Court Department on
December 12, 2016.

     The case was heard by Michael D. Ricciuti, J., on motions
for judgment on the pleadings.

     The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


     Andrew M. Batchelor, Assistant Attorney General, for the
defendants.
     Michael Sacco for the plaintiff.


_____

     [1] Public Employee Retirement Administration Commission.

LOWY, J.  In this case, the parties ask that we determine whether a police officer who is a member of a municipal retirement system must remit payments under G. L. c. 32, § 4 (2), to obtain creditable service for prior work conducted as a permanent-intermittent police officer (PIPO).  A Superior Court judge held that the Plymouth Retirement Board (Plymouth board) did not have to collect remittance payments from such members because G. L. c. 32, § 4 (2) (b), which expressly discusses PIPO creditable service does not mention a payment requirement.  The Contributory Retirement Appeals Board (CRAB) appeals, arguing that the provision, considered in the context of the whole statute, mandates remittance payments by member police officers for past intermittent work.  We agree with CRAB and therefore reverse.

Statutory scheme.  The Legislature created a "contributory retirement system" through which municipalities establish their own employee retirement systems, and form "municipal retirement boards to manage [those] systems."  Retirement Bd. of Stoneham v. Contributory Retirement Appeal Bd., 476 Mass. 130, 132 (2016), citing G. L. c. 32, § 20 (4) (b), (5) (b).  Members contribute to the system by payroll deductions.  See G. L. c. 32, § 22.  Retirement system members must be "regularly employed."  Retirement Bd. of Stoneham, supra, citing G. L. c. 32, § 3 (2) (a) (x).  A member's retirement benefits depend on

the individual's years and months of "creditable service," among other factors.  See G. L. c. 32, §§ 5, 10.  Creditable service is governed by G. L. c. 32, § 4, and includes "all service rendered" while an employee is a member of a retirement system.  See G. L. c. 32, § 4 (1) (a).

Some service rendered prior to an employee becoming a member of the retirement system is creditable.  G. L. c. 32, § 4 (2) (a).  Local retirement boards have "full jurisdiction" to determine whether a new member may receive creditable service for "part-time, provisional, . . . or intermittent employment."[2]  G. L. c. 32, § 3 (2) (d).  A retiree's benefits depend upon the individual's years and months of "creditable service" among other factors.  See G. L. c. 32, §§ 5, 10.  Once an intermittent employee becomes a member of the retirement system, the member may petition the relevant local retirement board to acquire creditable service for past intermittent work.  See G. L. c. 32, § 4 (2) (a).

The statute permits local retirement boards to determine how much "service in any calendar year is equivalent to a year

---

[2] The Legislature defines an employee as someone who is "regularly employed" and "whose regular compensation . . . is paid by any political subdivision of the [C]ommonwealth," including police officers, G. L. c. 32, § 1, and part-time workers.  See Essex County Retirement Bd. v. North Andover, 349 Mass. 233, 235 (1965).  The Legislature has left "regularly employed" undefined.  Id.

of [creditable] service" and how much creditable service is available for previous intermittent work.  G. L. c. 32, § 4 (2) (b).  However, for certain discrete employment categories, such as permanent-intermittent police positions, the statute limits the power of such boards to determine creditable service by mandating specific calculations.  Id.  For example, police officers must receive one year of creditable service, with a maximum of five years, for any time spent during the calendar year as "reserve or permanent-intermittent police officer[s] . . . on [their] respective list[s] and eligible for assignment to duty."  Id.

To acquire creditable service for previous intermittent work, members must remit payments "with buyback interest" in "an amount equal to that which would have been withheld as regular deductions" had they "been a member . . . during [that] previous period."  G.L. c. 32, § 4 (2) (c).  Section 4 (2) (c) has no express exemptions from the purchase formula.

Background and procedural history.  Plymouth police officer Antonio Gomes is a member of Plymouth's contributory retirement system.  Before becoming a permanent police officer, Gomes served as a PIPO -- someone who worked "only on such days as [he or she] might be called, and compensated accordingly."  Costa v. Selectmen of Billerica, 377 Mass. 853, 854 (1979).  Gomes

actively engaged in police work and earned money for his intermittent work.

In 1998, Gomes purchased full-time retirement credit for his prior intermittent service, with interest. In 2003, the Public Employee Retirement Administration Commission (PERAC) informed the Plymouth board that under G. L. c. 32, § 4 (2) (b), the board incorrectly had charged Gomes for the creditable service he earned as a PIPO. Despite the policy of the Plymouth board that member police officers must remit payments to obtain full-time credit for previous uncredited PIPO work, the board refunded Gomes's remitted payment, including the buyback interest.

Ten years later, CRAB decided MacAloney vs. Worcester Regional Retirement Sys., No. CR-11-19 (amended June 21, 2013), ruling that member firefighters must remit payments to purchase retirement credit for past intermittent work under G. L. c. 32, § 4 (2) (c). See G. L. c. 32, § 4 (2) (b) (addressing credit to intermittent work of firefighters). As a result of the MacAloney decision, the Plymouth board advised Gomes that he must "remit those funds previously refunded, together with buyback interest," in part because "it had always been the policy of the [Plymouth board] to require members . . . who rendered prior service as a reserve police officer to remit contributions and interest . . . in order to receive credit

rendered as a reserve police officer pursuant to [G. L. c. 32, § 4 (2) (b)]."

Gomes appealed from the Plymouth board's determination to the Division of Administrative Law Appeals (DALA). Siding with Gomes, the Plymouth board shifted course and claimed that it "disagree[d] with PERAC's interpretation of § 4 (2) (b) post-MacAloney," and asked that DALA join PERAC as a necessary party-defendant. DALA rejected the argument of Gomes and the Plymouth board that the MacAloney decision did not apply to Gomes. Gomes and the Plymouth board appealed to CRAB, which upheld DALA's ruling and affirmed the MacAloney decision.

CRAB rejected the argument that, because G. L. c. 32, § 4 (2) (b), does not explicitly state that a member is required to buy creditable service earned as a PIPO, the member is entitled to receive the creditable service at no cost. CRAB stated that that provision had to be considered in context, and that G. L. c. 32, § 4 (2) (c), set forth the requisite terms of payment for creditable service. The latter section, CRAB pointed out, did not contain an exemption for creditable service as a PIPO. CRAB also stated that § 4 (2) (c) listed general types of employment or service subject to the buyback calculation, and therefore, the absence of the specific phrase "permanent-intermittent police officer" in that provision did not matter. Finally, CRAB pointed out that to consider G. L.

c. 32, § 4 (2) (b), in isolation would produce an anomalous result:  a disincentive to become a member of the retirement system and to be subject to regular payments via payroll deductions.  The Plymouth board sought review in the Superior Court pursuant to G. L. c. 30, § 14.[3]

On cross motions for judgment on the pleadings, the Superior Court judge accepted the Plymouth board's view that the plain language of G. L. c. 32, § 4 (2) (b), does not require remittance payments by member police officers for past PIPO service because the statute states that local retirement boards "shall credit" police officers for up to five years of prior PIPO work.  CRAB timely appealed to the Appeals Court, and we transferred the case on our own motion.  We now reverse.

Discussion.  1.  Standard of review.  Statutory interpretation is "a pure question of law," and we therefore "exercise de novo review" of CRAB's analysis (citation omitted). Retirement Bd. of Stoneham, 476 Mass. at 134.  This court "typically defer[s] to CRAB's expertise and accord[s] great weight to its interpretation and application of the statutory provisions" it administers, such as G. L. c. 32, § 4 (2), and will reverse only if the "decision was based on an erroneous

_____

[3] Gomes did not appeal from the decision by CRAB.  Although CRAB disputed the standing of the Plymouth board in the Superior Court, CRAB did not raise the issue on appeal.  Thus, the issue is waived, and we assume that the Plymouth board has standing.

interpretation of law" (quotations and citations omitted).
Retirement Bd. of Stoneham, supra.  See G. L. c. 30A,
§ 14 (7) (c), (e).

2.  Statutory interpretation.  Both parties urge that the
plain language of G. L. c. 32, § 4 (2), supports their argument.
We agree with CRAB's interpretation that § 4 (2) only makes
sense when read as a coherent whole, because this interpretation
is consistent with the statute's plain language, correctly
interprets § 4 (2) within the entire statute without creating
surplusage, and accords with the apparent legislative purpose
behind G. L. c. 32 generally and § 4 (2) specifically.

a.  Plain language.  When conducting statutory
interpretation, this court strives "to effectuate" the
Legislature's intent by looking first to the statute's plain
language (citation omitted).  Matter of E.C., 479 Mass. 113, 118
(2018).  The express language of § 4 (2) (b) and (c)
demonstrates that the Legislature constructed the latter
provision to work together with the former.  First, § 4 (2) (c)
lays out a formula for "any employee of any governmental unit"
to purchase creditable service for past intermittent employment
rendered "prior to becoming eligible for membership in a
retirement system", see Gallagher v. Contributory Retirement
Appeal Bd., 4 Mass. App. Ct. 1, 11 (1976).  Section 4 (2) (c)
neither announces the necessary qualifications to measure

creditable service nor determines the amount of creditable service for which a member may be eligible; rather, it states that "the board may allow [such] credit" and merely requires payment.  G. L. c. 32, § 4 (2) (c).

Additionally, the purchase formula for past intermittent work in G. L. c. 32, § 4 (2) (c), does not exempt police officers or any other employees from its general applicability.  Where the Legislature did not include an exception in a statute, this court will not create one.  See Joslyn v. Chang, 445 Mass. 344, 352 (2005) ("[T]he duty of the court [is] to adhere to the very terms of the statute, and not, upon imaginary equitable considerations, to escape from the positive declarations of the text" [citation omitted]).

The plain language of G. L. c. 32, § 4 (2) (c), demonstrates the Legislature's intent to apply the payment formula without exemption to police officers for "creditable prior service" as defined by G. L. c. 32, § 4 (2) (b).  See Matter of E.C., 479 Mass. at 118 ("Ordinarily, where the language of a statute is plain and unambiguous, it is conclusive as to legislative intent").  Where § 4 (2) (c) describes how to purchase creditable service for previous PIPO work, § 4 (2) (b) explains how boards can or must measure the amount of that "creditable prior service" for intermittent work, subject to specific criteria for categories of members, like PIPOs, to whom

local retirement boards "shall credit" up to five years.  Colo v. Contributory Retirement Appeal Bd., 37 Mass. App. Ct. 185, 186-187 (1994).  In limiting retirement boards' discretion to measure creditable service regarding prior PIPO service, the Legislature nonetheless did not amend the instructions for how to obtain that creditable service found in the purchase provisions of § 4 (2) (c).  We conclude that § 4 (2) (b) therefore is silent on payment for creditable service not because the Legislature intended for member police officers to receive credit for past permanent-intermittent service without payment, but because the Legislature intended § 4 (2) (b) only as a measurement scheme.  Cf. Commonwealth v. Nascimento, 479 Mass. 681, 684 (2018) ("The Legislature's silence on a subject cannot be ignored," especially where it had opportunity to add language at issue [citation omitted]).

b.  Statute construed as a whole.  Beyond plain language, "[c]ourts must look to the statutory scheme as a whole," Retirement Bd. of Stoneham, 476 Mass. at 135, so as "to produce an internal consistency" within the statute (citation omitted). Matter of E.C., 479 Mass. at 118.  Even clear statutory language is not read in isolation.  See Casseus v. Eastern Bus Co., 478 Mass. 786, 795 (2018).

Considering the provisions of G. L. c. 32, § 4 (2), as an interrelated whole within the larger context of G. L. c. 32

supports CRAB's conclusion that member police officers must remit payments for creditable service for previous intermittent work.  Indeed, G. L. c. 32 "create[d] and describe[d] a contributory retirement system, i.e. a system maintained" by payments of members.  Rockett v. State Bd. of Retirement, 77 Mass. App. Ct. 434, 439-440 (2010).  This court thus adheres to the legislative intent to mandate payment by interpreting the subsections of § 4 (2) as codependent cogs within a contributory retirement mechanism.

 Each subsection of G. L. c. 32, § 4 (2) has a clear, connected role.  See L.L. v. Commonwealth, 470 Mass. 169, 178–179 (2014) (reading statute's sections together to construe harmonious whole).  Subsection (a) demands that new members seeking to "claim credit as provided for in" subsection (c) file "a detailed statement of any other [past temporary or permanent] service," and subsection (d) directs a local retirement board to "verify [the statement] as soon as practicable" after filing.  Given the express interconnected language of § 4 (2) (a), (c), and (d), we conclude that the Legislature did not intend for § 4 (b) to stand on its own statutory island.  Subsection (b) functions with the other provisions by providing a measurement criteria to local retirement boards.  The whole scheme, then, operates so that subsection (d) requires such boards to verify and certify the statement of service filed in subsection (a) as

soon as possible so that members who have been granted
creditable service, as determined by those boards in subsection
(b), may receive and begin paying for that service according to
the buyback formula found in subsection (c).  Moreover, our
reading of § 4 (2) follows the Plymouth board's long-standing
interpretation of this section  and conforms to the backbone of a
contributory retirement system:  employees investing a portion
of their earnings towards a future pension.[4]

Not only does reading all subsections within § 4 (2)
clarify its meaning, comparing the structure and language of
§ 4 (2) against the other sections of G. L. c. 32, § 4, such as
§ 4 (1), it also elucidates legislative intent.  See Scione v.
Commonwealth, 481 Mass. 225, 235 (2019), citing Ginther v.
Commissioner of Ins., 427 Mass. 319, 324 (1998) (one well-
established rule of statutory construction compares use of

---

[4] The CRAB decision in Grimes vs. Malden Retirement Bd., No.
CR-15-5 (Nov. 18, 2016), is not inconsistent with our holding.
In that decision, CRAB found that former PIPOs who were
available to be called into service, yet never were, could
obtain creditable service under G. L. c. 32, § 4 (2) (b),
without any remittance payments, because their purchase price
under the formula set forth in G. L. c. 32, § 4 (2) (c), was
zero, given that they never earned any money as PIPOs.  Although
contributory retirement systems inevitably result in some
inequities, we will not remedy possible unfairness in the face
of clear legislative intent.  See Housman v. LBM Fin., LLC, 80
Mass. App. Ct. 213, 218 (2011).  Further, to the extent that
this appears unfair, in 2009, the Legislature addressed such
outcomes in the new G. L. c. 32, § 4 (1) (o), discussed infra.
See St. 2009, c. 21, § 5.

language employed within different subsections of same statute).

Section 4 (1) has dozens of separate paragraphs, each of which

describes a discrete and mutually exclusive employment

circumstance, the method by which local retirement boards

measure creditable service, and the process by which employees

can obtain that creditable service.  Most sections require

payment expressly, see, e.g., G. L. c. 32, § 4 (1) (q), which

permits an inference that other subsections of § 4 (1) provide

exemptions for payment for past work.[5]  Unlike the structure of

§ 4 (1), specifically its independent subsections, each

subsection of § 4 (2) must be read together for the statute to

make sense.  The absence of an explicit payment provision in

§ 4 (2) (b) does not then operate as it would in § 4 (1),

because the payment provision of § 4 (2) (c) works alongside the

measurement criteria of § 4 (2) (b).

By reading § 4 (2) (b) in isolation, as the Plymouth board

requests, § 4 (2) (c) would be devoid of any purpose.  "The

---

[5] The Plymouth board cites to a memorandum and order by a panel of the Appeals Court that was issued pursuant to that court's rule 1:28, Lawrence Retirement Bd. v. Contributory Retirement Appeals Bd., 87 Mass. App. Ct. 1124 (2015), to argue that G. L. c. 32, § 4 (2) (b), exempts police officers from remitting payment.  Such memoranda and orders, however, have no precedential value.  In any event, the case concerned G. L. c. 32, § 4 (1) (b), covering service in a governmental unit before the unit became part of the retirement system, not the provisions at issue in this case.

canon against surplusage is strongest when an interpretation
would render superfluous another part of the same statutory
scheme" (citation omitted). City Elec. Supply Co. v. Arch Ins.
Co., 481 Mass. 784, 790 (2019). Section 4 (2) (b) is the sole
place in G. L. c. 32 where the Legislature instructs local
retirement boards about how to quantify the amount of credited
service available for previous intermittent work.[6] If the amount
of credit to provide to a member does not derive from § 4 (2)
(b), then the purchase formula of § 4 (2) (c) would become
obsolete.

On the Plymouth board's contrary reading of § 4 (2),
subsection (c) would retain a purpose without acting as the
purchase formula for PIPO service because it would continue as
the formula for other categories of employment cited in

_____

[6] Ten sections of G. L. c. 32 mention "intermittent"
employment. General Laws c. 32, § 3 (2) (a) (iv), discusses
whether teachers can become members. General Laws c. 32,
§ 3 (2) (d), outlines the jurisdiction of retirement boards to
determine whether temporary or intermittent employees can become
members. General Laws c. 32, § 5 (3) (c), discusses
"intermittent" in the context of how an actuary can "determin[e]
the normal yearly amount of any retirement allowance in
accordance" with the rest of G. L. c. 32. General Laws c. 32,
§§ 85H and 85H1/2, provide for disability retirement
compensation for intermittent employees. General Laws c. 32,
§§ 89, 89A, 89B, and 89E, provide annuities to dependents of
intermittent employees killed in the performance of duties.
General Laws c. 32, § 100A, provides benefits for intermittent
employees killed in the line of duty. Only G. L. c. 32, § 4,
titled "creditable service," explains how boards can measure
creditable time for intermittent employees. See G. L. c. 32,
§ 4 (2) (b).

subsection (b):  "part-time, provisional, temporary, temporary provisional, seasonal or intermittent."  Although we have found the statutory language to be clear, that does not mean that the Legislature drafted it perfectly.  Sometimes, it is challenging to "harmoniz[e] the provisions" of an imperfectly crafted statute so as to prevent surplusage.  Commonwealth v. Rodriguez, 482 Mass. 366, 370-371 (2019).  The drafting of § 4 (2) (b) undoubtedly leaves room for improvement, but that imperfection does not convince us that the Plymouth board was correct.

As the Plymouth board notes, although seasonal employees must complete "actual full-time service" of not less than seven months to receive a year of creditable time, local retirement boards "shall credit" members for past PIPO service even if members were solely on an eligibility list[7] and have never performed work while PIPOs.  G. L. c. 32, § 4 (2) (b).  Because PIPOs who did not work would still receive creditable service without any remittance, the Plymouth board infers that the Legislature intended the same for all PIPOs.  This court will not rewrite statutory language to find a meaning contrary to legislative intent.  See King v. Burwell, 135 S. Ct. 2480, 2492

---

[7] According to G. L. c. 32, § 4 (2) (b), local retirement boards "shall credit" as full-time service, not to exceed a maximum of five years, the period of time that PIPOs are on an eligibility list and are "eligible for assignment to duty subsequent to [their] appointment."

(2015) ("inartful drafting" does not permit court to interpret statute against clear legislative intent). Therefore, we decline to read § 4 (2) (b) as providing up to five years of creditable service without remittance payments to member police officers even if they were being paid and not making contributions to the retirement system.

The Plymouth board also contends that the provisions of G. L. c. 32, § 4 (2) (b) and (c), do not speak to one another regarding PIPOs because subsection (b) uses the phrase "permanent-intermittent" employment and subsection (c) only talks of "intermittent employment." We do not agree. First, the introductory clauses of both subsections (b) and (c) cover the same universe of "part-time, provisional, temporary, temporary provisional, seasonal or intermittent employment." "Where words in a statute are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute." Hallett v. Contributory Retirement Appeal Bd., 431 Mass. 66, 69 (2000). Second, the parties have not identified, and we have not found, a definition of "intermittent employment" in G. L. c. 32 or elsewhere.[8] Although § 4 (2) (b)

_____

[8] The Legislature seems not to have defined intermittent employment, even when related to permanent-intermittent police officers, see G. L. c. 31, §§ 60, 60A, but the category is often lumped with part-time employment. See, e.g., G. L. c. 30, § 46 (administration of classification and pay plans); G. L. c. 32B,

is the only place in G. L. c. 32 in which the phrase "permanent-intermittent" appears, we agree with CRAB that permanent-intermittent employment reasonably may be considered a subcategory of "intermittent employment," a category identical to those captured by the payment provisions of § 4 (2) (c). Matter of E.C., 479 Mass. at 118 (where "words used are not otherwise defined in the statute, we afford them their plain and ordinary meaning"). Through consideration of "the ordinary and approved usage of the language," Matter of E.C., supra, we conclude that the category of intermittent employment, occurring at irregular, noncontinuous intervals, includes a permanent-intermittent police officer, who works as needed by the police department. See Webster's New Collegiate Dictionary 598 (1980) (defining intermittent as "not continuous" and "coming and going at intervals"). See also Selectmen of Oxford v. Civil Serv. Comm'n, 37 Mass. App. Ct. 587, 588 (1994).

c. Legislative history. This court interprets a statute's plain language "in connection with the cause of its enactment" (citation omitted). Stearns v. Metropolitan Life Ins. Co., 481 Mass. 529, 532 (2019). Although "legislative history is not ordinarily a proper source of construction," we use it to augment our interpretation of the language of a statute

§ 9C1/2 (discussing insurance benefits for spouse and dependents of deceased intermittent firefighters). See also note 6, supra.

(citation omitted). AIDS Support Group of Cape Cod, Inc. v. Barnstable, 477 Mass. 296, 301 (2017). The legislative history of G. L. c. 32 generally and § 4 (2) specifically buttress our conclusion about the meaning of § 4 (2) (b).

First, the Legislature established a special commission to look into all retirement systems of the Commonwealth. 1945 House Doc. No. 1950. According to its 1945 report, issued a few months before the enactment of G. L. c. 32, see St. 1945, c. 658, the original intent of that chapter was to establish a system where "every government employee should contribute to his own retirement allowance" because "[n]on-contributory retirement allowances are unsound and at variance with the generally prevailing concept that both the employee and the employer should furnish funds to sustain employee pension plans." 1945 House Doc. No. 1950 at 5. In addition, subsequent amendments to the statute also reinforce legislative intent to require members to purchase creditable service. In 1947, the Legislature amended G. L. c. 32 to prevent certain unpaid intermittent workers from receiving creditable time towards their retirement. The amendment eliminated "person[s] holding a position" with "annual compensation" at "two hundred dollars or less" from membership eligibility. G. L. c. 32, § 3 (2) (d), as amended by St. 1947, c. 667, § 2. The Legislature limited membership in this way, in part, "because retirement boards will always have a

legitimate interest in denying membership to individuals" who provided little service or who would pay marginal amounts into the contribution system. Rotondi v. Contributory Retirement Appeal Bd., 463 Mass. 644, 650 (2012). In 2009, the Legislature reiterated its preference that members, including PIPOs on eligibility lists who were never called into service, remit payments to obtain creditable service by inserting G. L. c. 32, § 4 (1) (o), which asserted that no "state, county, or municipal employee" who earns less than $5,000 starting on July 1, 2009, can accrue creditable time for that service. See St. 2009, c. 21.

Finally, amendments to § 4 (2) (b) that added special creditable provisions for police officers discuss "credit[ing] . . . as full-time service" periods of permanent-intermittent work, see St. 1964, c. 125; St. 1964, c. 738; St. 1965, c. 73, or "count[ing] as full-time service," see St. 1966, c. 509. None of these amendments relative to PIPOs mentions payment or waives payment in a manner that suggests diverging from the generally applicable language of § 4 (2) (c). We conclude that the Legislature intended these amendments to provide former PIPOs with creditable years of service in recognition of their service as police officers; any PIPO who worked even the minimal amount of qualifying work within one calendar year could receive one year of creditable service, and local retirement boards are

denied any discretion to interfere.[9]  See G. L. c. 32, § 4 (2) (b).  Nowhere do the amendments suggest that former PIPOs would receive the credited time without repayment into the retirement system for the years that they were PIPOs once they become member police officers.  The legislative history demonstrates the legislative purpose to create a contributory retirement system worthy of its name into which all but those explicitly exempted must pay.

Conclusion.  For the reasons stated supra, we reverse the decision of the Superior Court and vacate the judgment.  A judgment affirming CRAB's decision shall enter.[10]

So ordered.

---

[9] Until 2009, the minimal amount of qualifying work for PIPOs was zero.  So long as they were on call, they could receive credit even if they were never called into duty.  See note 4, supra.

[10] The Plymouth board has the power to waive the interest payment on its own initiative, see G. L. c. 32, § 20 (5) (c) (2), or on the petition of Gomes.  See G. L. c. 32, § 20 (5) (c) (3).  We thus assume that the Plymouth board will consider whether "fairness [may] dictate" that Gomes should not have to pay interest on his second purchase of creditable service.  Cf. Doe v. Harbor Schools, Inc., 446 Mass. 245, 254 (2006) (noting that where legislation is silent regarding statute of limitations, "basic fairness dictates a more flexible approach").